

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

ENTERED
09/18/2008

| | | |
|---|---|---|
| IN RE: | § | |
| **YDALIA RODRIGUEZ; aka IDALIA** | § | **CASE NO: 02-10605** |
| **RODRIGUEZ; aka YDALIA PARDO** | § | |
| Debtor(s) | § | |
| | § | **CHAPTER  13** |
| | § | |
| **YDALIA RODRIGUEZ,** *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 08-01004** |
| | § | |
| **COUNTRYWIDE HOME LOANS, INC.** | § | |
| Defendant(s) | § | |

<u>**Memorandum Opinion**</u>

For nearly a century, the Supreme Court has recognized that individual debtors who successfully emerge from bankruptcy should receive a fresh start.  *Williams v. U.S. Fidelity & Guar., Co*., 236 U.S. 549, 554, 555, 35 S.Ct. 289, 290 (1915).

The fresh start "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.  The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." *Local Loan Co.*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699 (1934).

The Bankruptcy Code has seen many amendments over the years, but the fundamental fresh start purpose remains.  The Supreme Court "has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life with a clear

field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991) (quoting *Local Loan Co.*, 292 U.S. at 244).   Just last year, the Supreme Court reiterated that the fundamental purpose of the Bankruptcy Code is to grant "the honest but unfortunate debtor a fresh start." *Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105, 1106 (2007). This adversary proceeding raises allegations that, if proven, corrupt the promised fresh start.

## Summary of Allegations

Plaintiffs are former chapter 13 debtors who have mortgage contracts with Countrywide Home Loans, Inc. ("Countrywide").   Plaintiffs allege that they diligently completed their chapter 13 plans and received a discharge.   Plaintiffs' plans provided for the cure of all arrears on their home mortgages.   Accordingly, when Plaintiffs completed their final plan payment, they should have faced a "new opportunity in life with a clear field for future effort," unfettered by alleged arrearages on their home mortgages. *Local Loan Co.*, 292 U.S. at 244–45.

Plaintiffs allege that they entered their first day of post-discharge life in default. Essentially, Plaintiffs allege that Countrywide managed their mortgage accounts in a manner that violated Plaintiffs' chapter 13 plans.   Plaintiffs allege that Countrywide allocated chapter 13 plan payments among arrearages, pre-petition debts, and current principal and interest in contravention of Plaintiffs' plans.   Plaintiffs also allege that defendant Countrywide charged or accumulated undisclosed attorneys' fees and related expenses during their chapter 13 bankruptcy cases without notice to Plaintiffs or the Court.   Plaintiffs allege that only now, after Plaintiffs received their discharge and the bankruptcy court's eyes have turned to other cases, Countrywide is seeking to collect the accrued fees and expenses.   Plaintiffs allege that Countrywide is

threatening to, and in fact, will foreclose on their homes if they do not pay the thousands of dollars in accumulated fees and expenses.

Countrywide disputes Plaintiffs' rendition of the facts.  If Countrywide is correct and has not charged any unapproved fees and expenses, then they should certainly prevail in this litigation.  That is a matter for trial.  Countrywide also contends that, even if Plaintiffs' allegations are true, their mortgage contracts and Bankruptcy Code provisions allow them to delay collection of fees and expenses incurred during a pending chapter 13 case until after the debtor has received a discharge.  Through this contention, Countrywide seeks a pre-emptive determination by the Court that absolves Countrywide of liability even if it did impose unapproved fees and expenses.  Because Countrywide's theoretical argument is antithetical to chapter 13's fresh start, the Court denies Countrywide's motion to dismiss this lawsuit.

## Mortgages in a Chapter 13 Case[1]

Plaintiffs' claims cannot be understood without an explanation of the mechanics of handling chapter 13 mortgages.[2]  Chapter 13 includes several provisions drafted specifically to deal with mortgages.  The provisions grant mortgage lenders special rights no other creditors share.  Combined, the provisions have the effect of precluding the modification of a mortgage lender's right to payments pursuant to the lender's pre-petition mortgage contract.  A chapter 13 plan may not reduce the lender's claim to the value of the collateral under § 506 nor may the plan alter the contractual interest rate.  The plan may not per se preclude the collection of fees

---

[1] Pursuant to the Court's July 8, 2008 Order, the Court does not rule in this Memorandum Opinion on Countrywide's arguments that Plaintiffs have failed to state a claim for violation of the Bankruptcy Code or Rules. However, an explanation of the legal basis for Plaintiffs' claims is necessary to place in context Countrywide's arguments with respect to subject matter jurisdiction and a private right of action.

[2] The Court's use of the term "mortgages" is for convenience and encompasses deeds of trust, as well.  However, this Memorandum Opinion is limited to  mortgages or deeds of trust that are "secured only by a security interest in real property that is the debtor's principal residence" as set forth in § 1322(b)(2).

and expenses allowed by the contract.  Nor may the debtor obtain a discharge of amounts allowed by the contract.

Other provisions balance mortgage lenders' special rights with debtor rights and protections.  The primary right provided to debtors is the right to cure arrearages and remain current on mortgage debt so that debtors emerge from chapter 13 with the promised fresh start.

Two sections of the Bankruptcy Code are at the heart of this dispute.  Section 1322(b)(2) provides that a chapter 13 plan may:

> *modify the rights of holders of secured claims, other than a claim that is secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;*

The breadth of § 1322(b)(2) is limited by § 1322(b)(5), which reads as follows:

> *notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;*

Section 1322(b)(2)'s protections are not limited to principal and interest payments. Rather, § 1322(b)(2)'s language is broad, precluding the modification of any contractual right. Most mortgage contracts, including Countrywide's, allow lenders to incur reasonable expenses necessary to protect their security interest in a debtor's home ("Reimbursable Expenses").  Many mortgage contracts, including Countrywide's, also contain provisions stating that the lender may charge and collect the incurred Reimbursable Expenses at any time.  Mortgage lenders often, in fact, incur Reimbursable Expenses in a bankruptcy proceeding.  Countrywide may have incurred such Reimbursable Expenses in these cases.  For the purposes of this motion, the Court assumes that Countrywide also waited (at least in some instances) until Plaintiffs' bankruptcy cases were dismissed or closed before seeking to collect the Reimbursable Expenses.

Section 1322(b)(2)'s prohibition against modifying a mortgage lender's contract rights does not wholly immunize the lender from bankruptcy court oversight.  Congress balanced mortgage lenders' protections by granting debtors the right to cure arrearages and remain current on the mortgage debt.  Section 1322(b)(5) provides an explicit exception to § 1322(b)(2)'s mortgage modification prohibition.  Regardless of the mortgage contract, § 1322(b)(5) allows debtors to cure mortgage arrearages and maintain current payments through a chapter 13 plan. 11 U.S.C. § 1322(b)(5).

Sections 1322(b)(2) and (b)(5), together, define how a mortgage lender will be paid in a chapter 13 plan.  Based on these provisions, the plans in these cases provide that the debtors will pay a certain amount each month on account of their mortgages.  A portion of the established amount must be allocated to the outstanding pre-petition arrearages, and the remainder must be allocated to current principal and interest payments.[3]

Section 1322(b)(5) gives debtors the explicit right and duty to maintain payments.  If a lender seeks the fees without notice, then the debtor cannot remain current on the debtor's mortgage, but, rather, slips into default without any notice of the accruing fees.  Requiring lenders to seek Reimbursable Expenses as they are incurred during a chapter 13 plan does not conflict with § 1322(b)(2)'s prohibition against modification of a mortgage lender's contract rights.  Section 1325(b)(5) is a specific exception to § 1322(b)(2).

After a plan is confirmed, debtor and creditor rights and responsibilities are defined by the confirmed plan.  The Court Order confirming the plan binds the debtor and mortgage lender

---

[3] In some cases, a single payment is made to the chapter 13 trustee, who then distributes the payments for principal, interest, arrearages and other charges.  The Southern District of Texas now generally requires home mortgage payments to be made through the trustee. *Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007). Other plans provide for the debtor to pay a portion of this amount directly to the holder of the mortgage.  The payments are made pursuant to the plan, whether or not paid through the chapter 13 trustee.  *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478 (5th Cir. 1982).

to the allocation scheme provided for by the plan. 11 U.S.C. § 1327(a).[4]   The Court order imposes reciprocal rights and obligations on the debtor and the mortgage lender.  Both the debtor and the mortgage lender must abide by their plan obligations to protect the other's rights.  The debtor's obligations ensure payments to the mortgage lender and protection of the lender's collateral.  Accordingly, the debtor must make all payments within the time and in the amount prescribed by the plan.  If the debtor misses a payment, the debtor violates the terms of the plan and the debtor's case may be dismissed.  Upon dismissal, the debtor loses the protections of the automatic stay and the lender may foreclose on the home.

The creditor's obligations ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default.  Accordingly, the creditor must allocate payments pursuant to the plan.  Improper allocation of payments deprives a debtor of the promised fresh start and rights provided by § 1322(b)(5) to cure arrearages and remain current on mortgage obligations.  Thus, the mortgage lender must allocate payments among principal, interest, and arrearages in the manner prescribed by the plan.  If a mortgage lender allocates payments that the plan dedicates to pre-petition arrearages to principal and interest or a post-petition charge, without court approval, the mortgage lender violates the terms of the plan and the lender may be subject to liability for violating the order confirming the plan.

If a debtor completes the arduous three or five-year journey through chapter 13, the Bankruptcy Code grants the debtor a fresh start.  Section 1328 grants the debtor a discharge of most debts provided for by the chapter 13 plan.  Upon receiving a discharge, the debtor is immune from personal liability on any discharged debt.  A creditor cannot attempt to collect a discharged debt without violating § 524's explicit injunction against such collection efforts.

---

[4] Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

Not all debts are discharged by § 1328. Congress excepted mortgage debts from discharge. Section 1328(a)(1) specifically excepts from discharge "debts provided for under section 1322(b)(5)." Principal, interest, and arrearages provided for by the plan are not discharged. Nor are Reimbursable Expenses incurred (but not collected) discharged. Though the Reimbursable Expenses are provided for by the plan through § 1322(b)(2)'s incorporation of the contractual right to collect the expenses, debts provided for by the plan but not paid by the debtor are not discharged.

The fact that the debts are not discharged does not mean that the debts are not satisfied. When the plan is fully performed according to its terms, the arrearage has been cured and the ongoing mortgage payments have been maintained. Sections 1322(b)(5) and 1322(c), allowing debtors to cure defaults and remain current on their mortgage obligations, and the Court Order that confirmed the plan and imposed the binding effect of a plan provided by § 1327(a), have the effect of bringing debtors current on their mortgage obligations. Alternative interpretations of §§ 1322(b)(5), 1322(c) and 1327(a) would emasculate the underlying fresh start purpose of chapter 13.

Enforcement of the Court's Order confirming a chapter 13 plan, §§ 1322(b)(5), 1322(c), and 1327(a), and the fresh start, all require enforcement of Rule 2016(a). Federal Rule of Bankruptcy Procedure 2016(a) requires any party who seeks compensation from a debtor's estate to file with the court an application setting forth the source of the costs and the amounts requested.[5] Accordingly, a mortgage lender must file a Rule 2016 application before collecting

---

[5] Rule 2016(a) provides: "Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested . . . *The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity*." [emphasis added].

any Reimbursable Expenses while a chapter 13 case remains pending.  Absent the notice and court oversight triggered by Rule 2016(a), the debtor would have no knowledge of undisclosed, accruing fees charged to their account.  The concepts of "curing" an arrearage and being able to maintain payments would be ephemeral.

Collecting Reimbursable Expenses without filing a Rule 2016 application or after the completion of the debtors' plan obligations would violate the order confirming the debtor's chapter 13 plan.  A mortgage lender may not disrupt the payment allocation scheme provided by the plan by diverting amounts dedicated to arrearages or principal and interest without court approval.  Until the Court reviews a Rule 2016 application and issues an order modifying the payment allocation scheme provided by a chapter 13 plan, a mortgage lender may not collect Reimbursable Expenses without violating the order confirming the debtor's plan.

Chapter 13 and the fresh start purpose do not allow a lender to place a former debtor in default and foreclose on a debtor's home for non-disclosed charges that accrued during the course of the bankruptcy case.  The Supreme Court, Circuit Courts, and bankruptcy courts in all jurisdictions speak of the fresh start for a reason.  Chapter 13 exists for a purpose.

## Background

Plaintiffs Ydalia Rodriguez, Maria Antonieta Herrera, David Herrera, Lucy Moreno, and Alfonso Moreno ("Plaintiffs") all filed chapter 13 plans in the Southern District of Texas, had their chapter 13 plans confirmed, and obtained a discharge upon completing their plans.  The debtors allege that a few months, or, in one case, approximately one year after obtaining their discharges, Countrywide sent Plaintiffs notices of default.  The default notices stated that Plaintiffs owed anywhere from $3,000 to over $10,000 in past due payments, fees, and costs.  Plaintiffs contend that Countrywide has threatened to foreclose and has in fact foreclosed "on

hundreds, if not thousands, of homesteads of former debtors who were current on their home loans at the time of the foreclosure proceedings." (Plaintiffs' First Amended Complaint, p. 2, docket no. 42, adversary case no. 08-01004).  For example, Plaintiff Rodriguez contends that approximately three months after making all payments required by her chapter 13 plan, Countrywide sent her a default notice stating that she was in default in the amount of $8,837.20. The notice further stated:

> If the default is not cured on or before December 20, 2007, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at the time.  As such, the failure to cure the default may result in the foreclosure and sale of your property.

(Plaintiffs' First Amended Complaint, p. 17, docket no. 42, adversary case no. 08-01004). Unable to resolve her issues with the alleged default and facing foreclosure, Plaintiff Rodriguez obtained counsel.

On February 26, 2008, Plaintiffs filed this adversary proceeding against Countrywide. Plaintiffs allege that Countrywide is undertaking one or any combination of the following actions: (1) improperly allocating mortgage payments among principal, interest, and deficiency; (2) collecting pre-petition amounts or post-petition Reimbursable Expenses without court approval; (3) attempting to collect unreasonable and unauthorized fees and expenses; and (4) attempting to collect pre-petition or discharged debts after Plaintiffs received their discharge. Plaintiffs allege the above conduct violates various provisions of the Bankruptcy Code, including §§ 362, 506, 524, 1322(a)(1), 1322(b)(5), 1326(c), 1325, 1327, and 1328, Federal Rule of Bankruptcy Procedure 2016(a), the court order confirming their chapter 13 plans, and new contracts formed by the confirmed plan.

Plaintiffs' initial complaint sought certification of two Southern District of Texas classes: the "Chapter 13 Class" and the "Unapproved Fee Class." Both classes consists of individuals who filed a chapter 13 bankruptcy petition prior to October 16, 2005, had their chapter 13 plans confirmed, had mortgage contracts serviced by Countrywide, and were subject to Countrywide's allegedly illegal accounting practices. The "Chapter 13 class" was allegedly threatened with or actually suffered foreclosure due to the complained of accounting practices. The "Unapproved Fee Class" was subject to the complained of accounting and charging but has not yet faced threatened or actual foreclosure.[6] On March 25, 2008, Plaintiffs filed an Amended Complaint that sought to broaden the classes from Southern District of Texas classes to nationwide classes.

On April 8, 2008, the Court held a scheduling conference during which the Court considered how to proceed with this adversary. During the hearing, the Court noted administrative and efficiency concerns associated with opening discovery on nationwide classes prior to a finding that Plaintiffs could certify Southern District of Texas classes. The Court noted

---

[6] Specifically, the two classes are described as follows:

**"Chapter 13 Class."** All individuals who (a) have or had title to and possession of a homestead, (b) filed a chapter 13 proceeding prior to October 16, 2005 and had confirmed Chapter 13 plans that treated mortgages which are serviced by Defendant Countrywide, (c) completed all payments to the Chapter 13 Trustee in the amount required by the confirmed plan, as the plan may have been modified from time-to-time, or as previously ordered by a Bankruptcy Court, (d) were subject to the accounting practices complained of herein, and (e) as a result were thereafter advised by Defendant Countrywide that their mortgages were not current or will in the future be so advised.

**"Unapproved Fee Class."** All individuals who (a) filed a Chapter 13 proceeding prior to October 16, 2005 and have confirmed Chapter 13 plans that treated mortgages which are serviced by Defendant Countrywide and (b) as to whom Defendant has claimed as part of the amount due it an attorney's fee, late charge, "miscellaneous" or "other" fee or expense, or any other fee or charge, whether collected or not, which is assessed, directly or indirectly, after the filing of a bankruptcy petition, including but not limited to any fee or charge for preparing or filing a proof of claim, a motion to lift stay, a notice of termination of stay, an objection to discharge or plan confirmation, a demand letter, and any other fee or charge. Such fees do not include any attorney's fees or reimbursement of costs for which Defendant has made specific application and/or motion (not a proof of claim or reaffirmation agreement) to a United States Bankruptcy Court and for which a specific order of a United States Bankruptcy Court approving or denying said fees has been entered.

Plaintiffs seek certification of a subclass of each of the above classes for those former debtors residing in the jurisdiction of the United States District Court of the Southern District of Texas for purposes of the preliminary injunction requested herein.

that the costs and burdens of nationwide discovery would be significant, while consideration of a nationwide class after certifying Southern District classes, if necessary, would require minimal duplication of efforts.   Based on these considerations, the Court issued a Third Case Management Order (docket no. 47) that abated consideration of nationwide classes unless the Court first determined that certification was warranted for the purported Southern District of Texas classes.

Plaintiffs seek declaratory relief, actual and punitive damages, attorneys' fees, and sanctions for civil contempt.  Plaintiffs also seek a permanent injunction enjoining Countrywide from the complained of accounting practices and foreclosing on Plaintiffs' and putative class members' homes.  On March 23, 2008, Plaintiffs and Countrywide entered into an Agreed Stipulation.  Under the Stipulation, Countrywide agreed to refrain from foreclosing on real property owned by class members residing in the Southern District of Texas who met stipulated requirements, including that the class member be not more than one month delinquent on mortgage payments. The Stipulation applied until August 5, 2008.  On May 15, 2008, the parties entered into a second Agreed Stipulation that extended the terms of the first Stipulation until February 2, 2009.

### Issues Resolved in this Memorandum Opinion

On April 25, 2008, Countrywide filed a Motion to Dismiss (docket no. 63).  Countrywide generally asserts three bases for dismissal: (1) the Court lacks subject matter jurisdiction; (2) the Bankruptcy Code and Rules do not authorize private causes of action for Countrywide's alleged conduct; and (3) Countrywide's alleged conduct did not violate the Bankruptcy Code and Rules. On the same date, Countrywide also filed a Motion to Withdraw the Reference.

On June 9, 2008, the Court held a hearing on Countrywide's Motions. At the hearing, Countrywide informed the Court of factual inaccuracies in its Motion to Withdraw the Reference. The Court also noted that the Court could not adequately address Countrywide's contention that Plaintiffs failed to state claims for violation of the Bankruptcy Code and Rules without the production of Plaintiffs' mortgage account histories. The Court noted that resolution of this argument would depend on the nature and timing of the disputed charges. Facts with respect to the nature and timing of the disputed charges are uniquely within Countrywide's control. Prior to discovery, Plaintiffs could only guess as to the nature and timing of the disputed charges and the Court could only resolve Countrywide's argument by considering all potential factual scenarios in an unwieldy opinion that would essentially be an unconstitutional advisory opinion. Accordingly, the Court ordered Countrywide to submit Plaintiffs' account histories and both parties to submit any additional briefing on Countrywide's Motion to Dismiss by July 11. The Court also ordered Countrywide to submit an Amended Motion to Withdraw the Reference by June 23, and Plaintiffs to file a response by July 11.

On June 30, 2008, Plaintiffs filed emergency motions with respect to deadlines for filing responses to Countrywide's Amended Motion to Withdraw the Reference and Motion to Dismiss. Plaintiffs contended that the Amended Motion contained new factual assertions that were questionable based on Countrywide's prior inconsistent statements. Accordingly, Plaintiffs requested the Court to allow discovery on Countrywide's Amended Motion and extend the deadline for responding to the Motion. Plaintiffs also requested the Court to convert Countrywide's Motion to Dismiss into a motion for summary judgment because matters outside the pleadings—the account histories—were introduced.

On July 1, 2008, the Court issued a Case Management Order that granted Plaintiffs' relief in part. With respect to the Amended Motion to Withdraw the Reference, the Court authorized Plaintiffs to engage in discovery and extended the briefing deadline until October 17, 2008. With respect to the Motion to Dismiss, the Court stated that it would consider the Motion under Federal Rule of Bankruptcy Procedure 7056.[7] The Court did not continue Plaintiffs' briefing deadline because Plaintiffs did not comply with Rule 56(f). Subsequently, Plaintiffs filed the affidavit required by Rule 56(f).

On July 2, 2008, Countrywide filed an Amended Motion to Reconsider the Court's July 1 Case Management Order. On July 8, 2008, the Court issued an Order on Countrywide's Motion to Reconsider. The July 8 Order denied Countrywide's Motion with respect to discovery and deadlines applicable to the Motion to Withdraw the Reference. The July 8 Order granted in part and denied in part Countrywide's Motion with respect to discovery and deadlines applicable to the Motion to Dismiss.

The July 8 Order held that only a portion of the Motion to Dismiss would be considered under Rule 56. The Court reasoned that the Court needs to consider the account histories and other evidence to resolve Countrywide's arguments with respect to Plaintiffs' alleged failure to state a claim for violations of the Bankruptcy Code or Rules. The Court does not need to consider the account histories or other matters outside the pleadings to resolve the remaining arguments. Accordingly, the Order held that the Court would consider Countrywide's argument that Plaintiffs did not state claims for violation of the Bankruptcy Code under Rule 56, allowed discovery on these claims, and extended Plaintiffs' response deadline until after the conclusion

---

[7] Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 within bankruptcy court adversary proceedings. Accordingly, the Court refers to the Bankruptcy Rule and Rule of Civil Procedure interchangeably.

of discovery.  The Order held that the remaining arguments would not be considered under Rule
56.

On July 16, 2008, Plaintiffs filed an Emergency Motion to Reconsider the Court's July 8
Order.  Plaintiffs alleged that the Court must consider Countrywide's Motion to Dismiss, in its
entirety, under Rule 56.  On July 18, 2008, the Court issued an Order Denying Plaintiffs' Motion
for Reconsideration.  A motion to dismiss must be converted to a motion for summary judgment
only if the Court will actually consider matters outside the pleadings. *Marques v. Fed. Reserve
Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002) ("A motion under Rule 12(b)(6) becomes
a motion for summary judgment when the defendant attaches materials outside the complaint, as
the bank did, and the court 'actually considers' some or all of those materials.") (quoting
*Berthold Types Ltd. v. Adope Sys., Inc.*, 242 F.3d 772, 775–76 (7th Cir. 2001)); *State ex rel.
Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999); *Finley Lines Joint
Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997); *Aamot v. Kassel*,
1 F.3d 441, 441 (6th Cir. 1993) (holding that conversion of a Rule 12(b)(6) motion to a Rule 56
motion "takes place at the discretion of the court, and at the time the court affirmatively decides
not to exclude the extraneous matters."); *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*,
958 F.2d 15, 18 (1st Cir. 1992).

The Court's July 18 Order had the procedural effect of bifurcating the Motion.
Countrywide's arguments with respect to jurisdiction and the absence of a private cause of action
are legal arguments that do not require consideration of the account histories or other matters
outside the pleadings.  Countrywide's argument that Countrywide's conduct did not violate the
Bankruptcy Code or Rules would require consideration of matters outside the pleadings.
Accordingly, the Court held that it would initially resolve the first two arguments under Rule 12

and without consideration of matters outside the pleadings.  The Court noted that, "[i]f the Court converted Defendant's Motion to Dismiss into a motion for summary judgment in its entirety, the Court would not resolve arguments that require no consideration of the Account Histories until after lengthy and expensive discovery and any untold number of discovery disputes." (Order Denying Plaintiffs' Motion for Reconsideration, docket no. 101, p. 8).  If necessary, the Court held that it would then consider Countrywide's third argument under Rule 56.

Pursuant to the Court's prior orders, this Memorandum Opinion considers only a portion of Countrywide's Motion to Dismiss.  Specifically, the Court considers whether: (1) the Court lacks subject matter jurisdiction; and (2) Plaintiffs may assert private rights of action for Countrywide's alleged conduct.  The Court makes no holding as to whether Plaintiffs have stated claims for violations of the Bankruptcy Code and Rules.  The Court does not consider in this Memorandum Opinion whether Plaintiffs' allegations constitute violations of the automatic stay, the discharge injunction, the orders confirming Plaintiffs' chapter 13 plans, Bankruptcy Rule 2016, or any other Code Provision.  The Court will consider whether Bankruptcy Code provisions and Rules prohibit Countrywide's alleged conduct and whether Plaintiffs have evidence sufficient to survive summary judgment in favor of Countrywide at a later date pursuant to the Court's July 8, 2008 Order (docket no. 96).

For the reasons set forth below, the Court denies the portions of Countrywide's Motion to Dismiss considered in this Memorandum Opinion.

## Jurisdiction and Venue

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under § 157(b)(2).

**Analysis**

**i. Subject Matter Jurisdiction**

Countrywide asserts that this adversary proceeding should be dismissed under Federal Rule of Civil Procedure 7012(b)(1) because the court lacks subject matter jurisdiction for some or all of Plaintiffs' claims. Countrywide contends that some or all of the claims (1) have no effect on Plaintiffs' bankruptcy estates because the adversary proceeding concerns homesteads that are exempt from the bankruptcy estates; (2) concern post-discharge activity; (3) concern debts that were not provided for in Plaintiffs' chapter 13 plans; and (4) other than Rodriguez's claim, have no effect on named Plaintiff Rodriguez's bankruptcy estate.

**a. 12(b)(1)**

The party asserting jurisdiction bears the burden of proof. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a Rule 12 motion to dismiss for lack of subject matter jurisdiction, the court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera–Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)). The court "must accept all factual allegations in the plaintiff's complaint as true." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

**b. Subject Matter Jurisdiction Under 28 U.S.C. §§ 1334 and 157**

Section 1334 defines a district court's subject matter jurisdiction over bankruptcy matters. 11 U.S.C. § 1334. Section 157(a) allows district courts to refer to bankruptcy courts bankruptcy matters over which the district court has jurisdiction. 11 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising

under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.").   The United States District Court's General Order of Reference automatically refers these matters to the bankruptcy judges for this district. *In re Referrals to Bankruptcy Judges*, General Order 2005–6 (S.D. Tex. March 10, 2005). Accordingly, the jurisdictional analysis must begin with consideration of whether a district court has jurisdiction over the bankruptcy matter.

Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id*. Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)); *In re Wood*, 825 F.2d at 93).

A matter is "related to" a case under title 11 if the adversary proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022. An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). The possibility that a suit may ultimately have no effect on the estate is not enough to conclude that there would be no

*conceivable* effect. *Id.* "Certainty or even likelihood of such an effect is not a requirement." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001) (citing *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 858 (5th Cir. 1999)).

Bankruptcy courts' subject matter jurisdiction is not limited to matters "related to cases under title 11." Bankruptcy courts also have subject matter jurisdiction over matters arising under title 11 and arising in cases under title 11. 28 U.S.C. § 1332(b). With respect to closed cases, Circuit Courts have held that bankruptcy courts do not need to consider their "related to" jurisdiction, but instead have jurisdiction based on their "arising in" and "arising under" jurisdiction. "While courts may choose to rely on 'related to' jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because, as occurred here, a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as 'arising in' jurisdiction . . ." *Seven Fields Dev. Corp. v. Ernst Young LLP (In re Seven Fields)*, 505 F.3d 237, 260 (3rd Cir. 2007); *In re Wood*, 825 F.2d at 96 ("Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning."); *Bank United v. Manley*, 273 B.R. 229, 243 (N.D. Ala. 2001) ("The jurisdictional statutes offer three types of bankruptcy proceedings cognizable in the district courts, and in the bankruptcy courts by referral . . . [r]equiring the application of the *Pacor/Lemco Gypsum* test to all three types blurs the statutory distinction present among them."). Jurisdiction over matters arising under title 11 and arising in cases under title 11 is

generally referred to as a bankruptcy court's "core" jurisdiction. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999).[8]

Courts have not precisely defined what matters fall within a court's arising under title 11 and arising in a case under title 11 jurisdiction.  However, Courts have made it clear that proceedings involving substantive bankruptcy rights and the integrity of the bankruptcy courts fall within this core jurisdiction.

Generally, a matter arises under title 11 "if it invokes a substantive right provided by title 11." *In re Southmark*, 163 F.3d at 930; *In re Wood*, 825 F.2d at 97 ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding . . ."); *Bank United*, 273 B.R. at 243 ("The case law clearly holds that a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy court's 'arising under' or core jurisdiction.") (citing *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000).

Generally, a matter arises in a case under title 11 if it, "by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97 ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding . . ."); *In re Seven Fields Dev. Corp.*, 505 F.3d at 260 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3rd Cir. 2006)); *In re Southmark*, 163 F.3d at 930. The House Report leading to the 1978 Amendments specifies that the legislature intended for "arising under" to encompass the ability of the bankruptcy courts to "hear any matter under

---

[8] The "core" language can be confusing.  Section 157(b)(2) uses "core" to describe matters over which a bankruptcy court may exercise full article III court authority. 11 U.S.C. 157(b)(2). A bankruptcy court may still consider non-core matters, but may only submit proposed findings of fact and conclusions of law to the district court. 11 U.S.C. 157(c)(1). Only the district court may issue final orders and judgments for non-core matters. *Id*. Courts also use "core" to describe a bankruptcy court's subject matter jurisdiction over matters arising under title 11 or arising in a case under title 11. *In re Southmark Corp.*, 163 F.3d at 930.

which a claim is made under a provision of title 11." 1 RICHARD F. BROUDE ET AL, COLLIER ON BANKRUPTCY ¶ 3.01[4][c][i] (15th ed. 2006) (citing H.R. REP. NO. 595 (1977)).

### c. Subject Matter Jurisdiction Over Violations of Orders Confirming Plans

Countrywide contends that the Court lacks jurisdiction because the adversary proceeding will have no effect on the bankruptcy estates.  Countrywide reasons that the adversary proceeding concerns conduct with respect to Plaintiffs' home mortgages.  The homes are Plaintiffs' homesteads that qualified as exempt property.  Exempt property is not property of the bankruptcy estate.  Any adversary proceeding related to the homesteads will not affect the Plaintiffs' bankruptcy estates.  Absent an effect on the Plaintiffs' respective bankruptcy estates, the adversary is not "related to" Plaintiffs' bankruptcy cases and the Court therefore lacks jurisdiction.

Countrywide's argument obscures the fact that the homesteads relate to a consequence of Countrywide's allegedly unlawful accounting and collection practices; it is the allegedly unlawful accounting and collection practices, not the homesteads, that are the basis of this suit. As discussed below, the Court undoubtedly has subject matter jurisdiction over disputes arising under the debtors' confirmed chapter 13 plans.  This lawsuit alleges that Countrywide violated the confirmed plans through its accounting and collection practices.  The alleged conduct would constitute a violation of the Court Orders confirming Plaintiffs' respective plans.  As such, the claims arise in cases under title 11 and are within the Court's core subject matter jurisdiction.

### 1. Plaintiffs Allege Violations of Orders Confirming Plans

Plaintiffs' payment obligations to Countrywide were implemented by their court approved chapter 13 plans.  Plaintiffs' plans provided for payment of principal, interest, and arrearages to Countrywide through their chapter 13 plans.  The Fifth Circuit has held that chapter

13 debtors pay their mortgage obligations through their chapter 13 plan, whether or not payments are made through the chapter 13 trustee. *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 488 (5th Cir. 1982). This Court's *In re Padilla* decision held that a mortgage lenders' contractual right to charge and collect Reimbursable Expenses is also incorporated within a chapter 13 plan, though subject to procedural limits. *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007).

In *Padilla,* plaintiffs Benjamin and Denise Padilla made similar allegations to those raised by Plaintiffs in this adversary proceeding.  The *Padilla* plaintiffs alleged that, without court approval, the mortgage lender charged fees and costs to their accounts and collected the charges by allocating monthly principal and interest payments to the charges. *Id*. at 651–52. The Court held that, if the plaintiffs' allegations were proven, the mortgage lender's conduct may have violated Bankruptcy Rule 2016 and the Court Order confirming the plaintiffs' confirmed plans. *Id*. at 657–661. The Court noted that § 1322(b)(2) has the effect of incorporating a mortgage lender's contract rights into a chapter 13 plan. *Id*. at 659–60 (citing *Nobelman v. American Sav. Bank*, 508 U.S. 324, 328, 113 S.Ct. 2106 (1993)). The lenders' contract rights included the right to charge and collect Reimbursable Expenses. *Id*. at 660. Section 1322(b)(2)'s preservation of a mortgage lender's contract rights therefore incorporates the lender's right to charge and collect the disputed costs within a debtor's chapter 13 plan. *Id*. at 559.

However, the Court held that if a mortgage lender collected Reimbursable Expenses without Court approval through a Rule 2016 application, the lender violated Rule 2016 and the Court Order confirming the chapter 13 plan. *Id*.

Accepting the Plaintiffs' allegations as true, Countrywide violated the order and the plan in two ways.

First, it charged fees without obtaining an order under Rule 2016.  The chapter 13 plans at issue in this proceeding expressly provide the portion of a payment that must be allocated to pre-petition arrearages.  If Countrywide applied payments in a manner that is inconsistent with the plans, then Countrywide has applied monies from the debtor Plaintiffs in violation of the Court Orders confirming the plans. *Id.*

Second, as set forth in *Padilla,* because the confirmed plan incorporates contract rights and the contract only allows for *reasonable* amounts, charging and collecting *unreasonable* amounts would violate the Court Order confirming the plan. *Id.* at 559–61.

Countrywide argues that these potential violations did not involve estate property because the homes at issue are exempt.  Although this argument is addressed in more detail above, the Court notes that the wages that were collected and paid pursuant to the plan were property of the estate.  11 U.S.C. § 1306(a)(2).  It is the payments—not the homes themselves—that were allegedly applied in contravention of the Orders confirming the plans.

The Court declines to revisit the *In re Padilla* decision.  *In re Padilla* has not been appealed.  *In re Padilla* is consistent with other bankruptcy court decisions that have considered the issue.[9]  No Circuit Court has issued a decision inconsistent with *In re Padilla*'s holding.

---

[9] *See for e.g., In re Payne*, 387 B.R. 614 (Bankr. D. Kan. 2008); *In re Sanchez*, 372 B.R. 289 (Bankr. S.D. Tex. 2007); *Jones v. Wells Fargo Home Mortgages*, 366 B.R. 584 (Bankr. E.D. La. 2007); *In re Tate*, 253 B.R. 653 (Bankr. W.D.N.C. 2000).

Countrywide attached to its Supplemental Briefing a recent bankruptcy court opinion from the Eastern District of Pennsylvania. *Padilla v. GMAC Mortgage Corporation (In re Padilla)*, 389 B.R. 409 (Bankr. E.D.P.A. 2008). The Court notes that the Pennsylvania bankruptcy court held that conduct constituting a breach of the confirmed plan did not also constitute a breach of the court order confirming the plan. *Id.* at 420.  For the reasons set forth in this Court's *In re Padilla* decision, the Court respectfully disagrees. *In re Padilla*, 379 B.R. 643 (Bankr. S.D. Tex. 2007). The Court notes that the Pennsylvania *Padilla* decision did hold that the disputed conduct was prohibited and subject to a remedy through § 105.  The Pennsylvania *Padilla* decision differed from the Texas *Padilla* decision in that the Pennsylvania Court held that § 1327(a) rather than the Court Order confirming the plan created the legal right from which the § 105 remedy arose. *In re Padilla*, 389 B.R. at 433.

Accordingly, the Court rejects Countrywide's argument that Plaintiffs' chapter 13 plans did not provide for the disputed charges.

### 2. Subject Matter Jurisdiction Over Plan Administration

This Court has subject matter jurisdiction over an adversary proceeding asserting violations of a confirmed plan. A matter concerning the administration of a chapter 13 bankruptcy plan concerns matters that "by [their] nature, could arise only in the context of a bankruptcy case." *In re Southmark*, 163 F.3d at 930. The Fifth Circuit has left no doubt that bankruptcy courts have core "arising under" subject matter jurisdiction over adversary proceedings alleging violations of a confirmed plan. *Mackey v. M.C. Investments (In re Martinez)*, 2000 WL 34508398 (5th Cir. Oct. 5, 2000) ("Appellee claimed breach of the notice provisions of the confirmed plan . . . [w]hether the plan required such notice requires interpretation of the plan, which is a matter 'arising under title 11.'") (citing *In re National Gypsum Co.*, 118 F.3d at 1064). The Fifth Circuit has also held that bankruptcy courts have subject matter jurisdiction over allegations of plan violations in the form of improper allocation of post-petition payments. *In re Foster*, 670 F.2d at 489–90. This Court's *In re Padilla* decision previously found subject matter jurisdiction over allegations of violations of confirmed plans and Rule 2016. *In re Padilla*, 379 B.R. at 653 & n. 4.[10]

### d. Subject Matter Jurisdiction Over Closed Cases

With the exception of one named Plaintiff, Plaintiffs have received chapter 13 discharges and no longer have pending bankruptcy cases. Generally, after a bankruptcy case is closed, a

---

[10] Plaintiffs also seek relief for violations of §§ 1322(b)(5), 1322(a)(1), 1326(c), 1327(a), and 1328 of chapter 13 of title 11. The Court's reasoning for finding subject matter jurisdiction over allegations of violations of orders confirming chapter 13 plans applies equally to allegations of violations of the cited chapter 13 provisions. The chapter 13 provisions define the contents of plan, how the plan must be administered, and the binding effect of the plan. Accordingly, allegations of violations of these chapter 13 provisions, just like allegations of violations of orders confirming chapter 13 plans, all constitute matters concerning the administration of a chapter 13 bankruptcy estate that "by its nature, could arise only in the context of a bankruptcy case" and therefore fall within the Court's "arising under Title 11" subject matter jurisdiction. *In re Southmark*, 163 F.3d at 930.

bankruptcy estate no longer exists, and therefore, the bankruptcy court generally will not have subject matter jurisdiction. *In re Bass*, 171 F.3d at 1022. Nevertheless, bankruptcy courts retain significant jurisdiction after a discharge order is issued and a case is closed. The Court's subject matter jurisdiction over closed cases extends to conduct that allegedly violated orders confirming plans and Rule 2016.

As discussed earlier in this Memorandum Opinion, the fresh start is a principal purpose of chapter 13 of the Bankruptcy Code. *Marrama*, 127 S.Ct. at 1115. Section 1322(b)(5) and the confirmed plan bring debtors current on mortgage payments, providing the promised fresh start on home mortgage payments. Accordingly, the right to enforce a confirmed plan is one of the most important rights afforded debtors by chapter 13. The fresh start cannot be enforced without binding a creditor to the court confirmed plan.

The Fifth Circuit has clarified that after a bankruptcy case is closed, a bankruptcy court nevertheless has subject matter jurisdiction to protect important debtor rights created by the Bankruptcy Code. *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) (holding that bankruptcy courts retain subject matter jurisdiction over a discharged debtor with respect to "matters pertaining to the implementation of the plan") (citing *In re Fairfield Cmtys. Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1991); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993); *In re National Gypsum*, 118 F.3d 1056, 1063 (5th Cir. 1997).

In *National Gypsum*, defendants raised the same jurisdictional arguments raised by Countrywide. *Id.* at 1062. Prior to the debtor's chapter 11 plan confirmation, defendant insurer had advanced funds on the debtor's behalf. *Id.* at 1059. Debtor's chapter 11 plan provided for the pre-petition advances. *Id.* After the bankruptcy court confirmed the debtor's plan and the debtor received a discharge, defendant insurer sent a demand letter for the pre-petition advances. *Id.*

The debtor filed an adversary proceeding alleging that the defendant's conduct violated their confirmed plan and the discharge injunction. *Id*. at 1060. The Bankruptcy Court held that it had core jurisdiction to consider the debtor's complaint because it involved the court's confirmation order. *Id*. Defendant appealed the Court's finding of subject matter jurisdiction, arguing that debtor's complaint was essentially an affirmative defense to a state court cause of action and therefore did not arise under title. *Id*. at 1062. Debtor argued that "a proceeding to determine whether a creditor violated section 524(a)'s discharge injunction, the reorganization plan, or the confirmation order is a core proceeding under section 157(b)." *Id*.

The Fifth Circuit held that debtor's adversary proceeding, seeking damages for violation of the discharge injunction, confirmed plan, and confirmation order, was a core proceeding. *Id*. at 1062. The Fifth Circuit had previously defined a core proceeding arising under title 11 as a proceeding that "invokes a substantive right provided by title 11." *In re Wood*, 825 F.2d at 97. The *Gypsum* Court held that debtor's allegations that defendant violated the discharge injunction, confirmed plan, and confirmation order fell within the bankruptcy court's core jurisdiction. *Id*. at 1064.

The *Gypsum* Court also cited numerous cases holding that complaints for violations of the discharge injunction, confirmed plan, and confirmation constitute core matters. *Id*. at 1063 (citing *In re Texaco*, 183 B.R. 937, 944 (Bankr. S.D. N.Y. 1995) ("There can be no question that a proceeding such as this [motion for contempt], to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to' a case under title 11.")); *In re Pettibone Corp.*, 151 B.R. 166, 169–70 (Bankr. N.D. Ill. 1993); *In re Polysat*, 152 B.R. 886, 888 (Bankr. E.D. P.A. 1993) ("As the instant proceeding concerns the scope of the discharge injunction arising from Sections 524 and 1141 of the Code, it is a core proceeding

under 28 U.S.C. § 157(b)(2)(A), (I), or (O)"); *In re Jacobs*, 149 B.R. 983, 989 (Bankr. N.D. Okla. 1993); 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] at 524–18 ("A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2), (O) of title 28, and courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined.")). *See also*, *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D. N.C. 2000).

It is noteworthy that Countrywide alleges that this Court's subject matter jurisdiction is limited to matters that affect the bankruptcy estate's assets and liabilities.  Countrywide's proposition relies only on statements made in cases where the issue concerned something other than enforcement of a fundamental bankruptcy right or an order confirming a plan.  Indeed, Countrywide relies on cases dealing with untoward attempts to invoke bankruptcy jurisdiction to resolve non-core disputes that did not arise under Title 11.  Upon the granting of the discharge, the estate ceases to exist. *In re Craig's Stores of Texas, Inc.*, 266 F.3d at 390 (noting that "the debtor's estate terminates" upon the discharge granted by confirmation of a chapter 11 plan); *In re Hence*, 2007 WL 4333834 at *2 & n. 4 (Bankr. S.D. Tex. Dec. 5, 2007) ("Because the Debtor in the case at bar has not yet received his discharge, the estate still exists.").

This Court's *In re Padilla* decision previously considered a bankruptcy court's post-discharge subject matter jurisdiction over allegations of violations of orders confirming a plan, Rule 2016, and the automatic stay. *In re Padilla*, 379 B.R. at 653 & n.4.  The Court noted:

> "[I]t is well established that courts retain jurisdiction to enforce their own orders". *Koehler v. Grant*, 213 B.R. 567 (8th Cir. B.A.P. 1997) (citing *Shillitani v. U.S.*, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535, 16 L.Ed. 2d 622 (1996); *Ex Parte Robinson*, 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873); *In re Bradley*, 989 F.2d 802, 804 & n.3 (5th Cir. 1993); *In re Ragar*, 3 F.3d 1174, 1179 (8th Cir. 1993). The partial summary judgment motions in this case

> contain allegations that Wells Fargo and Novastar violated the court order confirming the Padillas' and Sanders' confirmed plans.
>
> The Fifth Circuit has also found that after a bankruptcy case is closed, subject matter jurisdiction remains in the Bankruptcy Court to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated. *In re Bradley*, 989 F.2d 802 (5th Cir. 1993). In *Bradley,* the Court held that the alleged post-discharge employment discrimination against a debtor under 11 U.S.C. § 525 mandated that the Court exercise its subject matter jurisdiction. *Id.* at 804. This case is analogous.  If a lender could wait until the conclusion of a bankruptcy case—and then impose disallowed charges—the debtor's fresh start would not be fresh at all.  It is well-recognized that a fresh start is a fundamental purpose of current bankruptcy law.  *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1115 (2007).

*Id. See also Bank United*, 273 B.R. at 243 ("Generally, jurisdiction over bankruptcy proceedings ceases with the closing of the bankruptcy estate, but Congress has stated that in some instances jurisdiction continues after the estate is closed because the proceeding would still 'arise under' title 11."); *In re Harris*, 2008 WL 924939 at * 3 & n. 2 (Bankr. S.D. Tex. April 4, 2008) ("Moreover, even if the Debtors had completed their plan and there was no longer an estate, this Court would still have jurisdiction over this suit.").

Again, the Court declines to revisit *In re Padilla*.  Based on the precedent cited above, this Court retains subject matter jurisdiction over a closed case to consider whether a defendant violated the confirmation order.[11]

### e. Subject Matter Jurisdiction Over Named Plaintiffs with Closed Cases

Countrywide also makes a separate objection to subject matter jurisdiction over particular named Plaintiffs.  These particular named Plaintiffs include Ydalia Rodriguez, Maria Antonieta

---

[11] The Court adopts the same reasoning with respect to Plaintiffs' allegations of violations of §§ 506, 1322(b)(5), 1322(a)(1), 1326(c), 1327(a), and 1328.  The provisions define what must be in a plan, how the plan must be executed, and the effect of a confirmed plan.  Accordingly, allegations of violations of the cited provisions are "matters pertaining to the implementation or execution of a plan" arising under title 11. *In re Craig's Stores of Tex., Inc.*, 266 F.3d at 390).

Herrera, David Herrera, Lucy Moreno, and Alfonso Moreno.  Countrywide asserts that the claims of these named Plaintiffs have no effect on Ydalia Rodriguez's bankruptcy case.  Absent such an effect, Countrywide argues that their claims are not related to Ydalia Rodriguez's bankruptcy case.  Absent relation, Countrywide reasons that the court lacks subject matter jurisdiction.  The Court rejects Countrywide's argument.

The jurisdictional test is not whether each cause of action relates to or arises in or under the *Rodriguez* bankruptcy case.  The test is whether each cause of action relates to or arises in or under *any* bankruptcy case.  Adversary proceedings are not filed in bankruptcy cases.  Adversary proceedings are filed separately from a bankruptcy case.  An adversary proceeding can be filed long after a bankruptcy case has been filed and even after a bankruptcy case has been closed.  An adversary proceeding is given its own adversary proceeding number.  The docket sheet for an adversary proceeding shows a case relationship solely for administrative—not jurisdictional— reasons.  A docket sheet itself can neither create nor destroy jurisdiction.   For the purposes of "arising in" and "arising under" subject matter jurisdiction, an adversary proceeding need not relate to only one bankruptcy case.  Rather, the adversary proceeding may simultaneously be related to or arise in or under multiple bankruptcy cases and still fall well within § 1334's jurisdictional boundaries.

The named Plaintiffs all assert violations of substantive Bankruptcy Code provisions, bankruptcy court orders, and substantive bankruptcy rights.  As discussed above, bankruptcy courts have core subject matter jurisdiction arising from the need to ensure compliance with court orders and protect important debtor rights.[12]  "At the very least a bankruptcy court may

---

[12] Countrywide's argument, if accepted, would also preclude bankruptcy courts from ever hearing class-action lawsuits, contrary to significant precedent. *Sims v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 485–87 (Bankr. E.D. Tenn. 2002) (citing numerous cases finding bankruptcy court jurisdiction over class-actions).

exercise subject matter jurisdiction over the claims of debtors whose underlying cases were filed in that court's district . . . [a] contrary holding would effectively read Bankruptcy Rule 7023 ('Class Proceedings') out of the law entirely." *In re Tate*, 253 B.R. 653, 654 (Bankr. W.D. N.C. 2000).

The Court makes no determination as to the Court's subject matter jurisdiction over a nationwide class-action.  Pursuant to the Court's prior orders, the Court is only considering certification of a Southern District of Texas class.  If certification of a Southern District of Texas class is proper, then the Court will consider certification of a nationwide class and any jurisdictional arguments with respect to a nationwide class-action proceeding.

### f. Discharge Injunction

Based on the pleadings presented so far and § 1328's explicit exception of a mortgage lender's debts from the discharge, the Court declines to consider its subject matter jurisdiction over Plaintiffs' discharge injunction claims.  To the extent Plaintiffs' claims for violation of the discharge injunction survive the portion of Countrywide's Motion to Dismiss that the Court has deferred until discovery is completed, the Court will consider its subject matter jurisdiction over the claim.  The Court does not now rule that Plaintiffs have failed to state a claim for violation of the discharge injunction, but the Court does not presently understand how Plaintiffs' allegations fall within the discharge injunction itself.

---

Moreover, the Federal Rules of Bankruptcy Procedure explicitly incorporate Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 governs the administration of class-action lawsuits.

**ii. Private Right of Action**

Plaintiffs' complaint seeks relief for violations of the orders confirming Plaintiffs' chapter 13 plans, Rule 2016, the automatic stay, and the discharge injunction. Countrywide contends that Plaintiffs' complaint asserts private rights of action for violations of statutory provisions that do not create a private right of action. Consequently, Countrywide contends that Plaintiffs' complaint must be dismissed for failure to state a claim upon which relief can be granted.[13]

**a. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994). All facts plead must be specific, not merely conclusory. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true. *Albright v. Oliver,* 510 U.S. 266, 268 (1994). When evaluating Rule 12(b)(6) motions, the Court should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

---

[13] Countrywide concedes that debtors may assert a cause of action for violation of § 362, the automatic stay. Countrywide undoubtedly contests Plaintiffs' contention that a confirmed plan is a contract. Nevertheless, whether a confirmed plan constitutes a contract for which traditional contract damages can be sought is a legal question that will be addressed when the Court considers Countrywide's contentions that Plaintiffs have not stated recognizable claims. Countrywide does not dispute that a party may assert a cause of action for a breach of contract, and that is the only issue addressed in this Memorandum Opinion. The Court's analysis in this Memorandum Opinion considers only the causes of action contested by Countrywide.

### b. Civil Contempt and Section 105

Countrywide's argument is not novel.  Other defendants have raised the same argument against complaints for violation of the discharge injunction, a confirmed plan, and an order confirming a plan. *See In re Nat'l Gypsum Co.*, 118 F.3d at 1062 (noting that the defendant "argues that any affirmative right conferred by 11 U.S.C. § 524(a) does not confer an independent federal cause of action."); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 ("The appellee, however, disputes the existence of an implied right of action [for violation of § 524(a)] based upon the four-factor analysis used to determine Congress's intent, set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)."). Both the *Gypsum* and *Bessette* Circuit Courts rejected defendants' argument.  Supreme Court and Circuit Court precedents have established debtors' right to seek relief for violations of a confirmed plan, the orders confirming the plans, the automatic stay, and the discharge injunction.

The Court finds the "private right of action" argument to be a red herring.  In the *Cort v. Ash* line of cases, plaintiffs sought relief from the statute allegedly violated.  The plaintiffs asked the court to carve out of the particular statutory provision a remedy that the statute did not provide. For example, in *Cort*, the plaintiffs contended that defendants violated 18 U.S.C. § 610, a criminal statute that prohibited corporations from making certain contributions to Presidential or Vice Presidential elections. *Cort*, 422 U.S. at 68.  The plaintiffs asked the court to create an implied private cause of action for damages out of the same statute the defendants allegedly violated, 18 U.S.C. § 610. *Id.*

In this adversary proceeding, Plaintiffs do not ask the court to imply a private right of action from the Code provisions allegedly violated.  Rather, Plaintiffs request relief arising from the Court's inherent civil contempt authority, and the Court's authority to issue orders necessary

to effectuate the purposes of the Bankruptcy Code provided by § 105.  The complaint is, at its

heart, a complaint seeking relief under the court's contempt authority and § 105.

In *Bessette*, the First Circuit considered a defense identical to Countrywide's. *Bessette*,

230 F.3d 439. In *Bessette*, a class alleged that defendants violated the discharge injunction by

coercing debtor class members into signing reaffirmation agreements with respect to pre-petition,

discharged debt. *Id.* at 442. The *Bessette* defendants, like Countrywide, alleged that § 524, the

discharge injunction, did not create a private cause of action. *Id.* at 444. The First Circuit

emphatically rejected the defendants' argument, holding that Plaintiffs could bring private causes

of action for violations of Bankruptcy Code provisions that create or enforce important rights. *Id.*

at 444–45. The *Bessette* Court held:

> As this Court has previously recognized, "[s]ection 105(a) empowers the
> bankruptcy court to exercise its equitable powers—where 'necessary' or
> 'appropriate'—to facilitate the implementation of other Bankruptcy Code
> provisions." *Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp.
> Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *see also SPM Mfg. Corp. v. Stern (In
> re SPM Mfg. Corp.)*, 984 f.2D 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938
> F.2d 1467, 1475 (1st Cir. 1991). While it is true that the considerable discretion
> conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not
> 'a roving commission to do equity,' *Noonan*, 124 F.3d at 27 (quoting *Chiasson v.
> J. Louis Matherne & Assocs.*, 4 F.3d 1329, 1334 (5th Cir. 1993)), a court is well
> within its authority if it exercises its equitable powers to enforce a specific code
> provision, *see id.; SPM MFG.*, 984 F.2d at 1311, such as § 524.  Thus, § 105 does
> not itself create a private right of action, but a court may invoke § 105(a) "if the
> equitable remedy utilized is demonstrably necessary to preserve a right elsewhere
> provided in the Code," *Noonan*, 124 F.3d at 28, so long as the court acts
> consistent with the Code and does not alter the Code's distribution of other
> substantive rights, *see id.; SPM MFG.*, 984 F.2d at 1311 . . .
>
> Against this background it is clear . . . that a bankruptcy court is authorized to
> invoke § 105 to enforce the discharge injunction imposed by § 524 and order
> damages . . . if the merits so require.   Consistent with this determination,
> bankruptcy courts across the country have appropriately used their statutory
> contempt power to order monetary relief, in the form of actual damages, attorney
> fees, and punitive damages, when creditors have engaged in conduct that violates
> § 524. *See, e.g., In re Hardy*, 97 F.3d at 1389–90; *In re Elias* 98 B.R. at 337;
> *Cherry*, 247 B.R. at 191; *In re Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala.

1997); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 66 (Bankr. N.D. Ill. 1998) (denying motion to dismiss), *vacated on other grounds*, 237 B.R. 677 (Bankr. N.D. Ill. 1999 (finding class representative inadequate because she suffered no injury); *Mathews*, 184 B.R. at 599–601; *In re Bowling*, 116 B.R. 659, 664–65 (Bankr. S.D. Ind. 1990); *cf. In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers). Therefore, we hold that § 524 is enforceable though § 105. *See Malone*, 245 B.R. at 395.

*Id.* at 445.

As the First Circuit noted, the Court "see[s] no reason to jump into the fray with the complex analysis required by *Cort v. Ash* when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a)." *Id.* at 444.

The First Circuit's *Bessette* holding recognizes the distinction between courts' statutory and inherent contempt authority, and this holding is consistent with § 105's plain language and recent Supreme Court and Fifth Circuit precedent.  Bankruptcy courts have inherent civil contempt authority. *Jove Eng'g*, 92 F.3d 1539, 1553 (11th Cir. 1996). "In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991); *In re Yorkshire, LLC*, --- F.3d -----, 2008 WL 3306680 at *3 (5th Cir. Aug. 8, 2008) ("It is well-settled that a federal court, acting under inherent authority, may impose sanctions against litigants or lawyers . . .). The Court's "inherent powers arise independently of any statute or rule." *Jove Eng'g*, 92 F.3d at 1553. Section 105 of the Bankruptcy Code provides independent statutory contempt and other authority. *Id.* ("Distinct from the court's inherent powers are statutory contempt powers that § 105(a) grants in the bankruptcy context.").

Section 105's plain language grants bankruptcy courts broad remedial authority.  Section 105(a) provides:

> The Court may issue ***any order, process, or judgment that is necessary or appropriate*** to carry out the provision of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination ***necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.***

11 U.S.C. § 105(a) (emphasis added).  Section 105(a) plainly states that the court can issue any "judgment" necessary or appropriate to carry out requirements of the bankruptcy code.  Any judgment would include any remedy available in a private cause of action.  Moreover, § 105 does not require a court to use the least restrictive means to carry out the requirements of the Code.  Section 105(a) does not say that the Court's authority is limited to orders or judgments *necessary* to carry out the Code.  Rather, Congress explicitly added to the statute deferential, discretionary language with "or appropriate."  Courts must give effect to a statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026 (1989).

Just last year, the Supreme Court emphasized the Court's broad authority under § 105 and the need to apply § 105 according to its terms.  In *Marrama*, the Supreme Court held that, under § 105, bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent the abuse of process.'" *Marrama*, 127 S.Ct. at 1111–1112; *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (noting that § 105(a) "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code).

Courts, appropriately applying § 105's plain language, have used § 105 to grant plaintiffs a broad range of remedies, including any damage remedy available in a private cause of action. *Jove Eng'g, Inc.*, 92 F.3d at 1554 ("Therefore, the plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensatory or punitive, as long as it is 'necessary or

appropriate to carry out the provisions of" the Bankruptcy Code.); *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609 613 (5th Cir. 1997) ("Reading [§ 105(a)] under its plain meaning, we conclude that a bankruptcy court can issue *any* order, *including* a civil contempt order, necessary to carry out the provisions of the bankruptcy code . . . which compensate a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141 . . .") (emphasis added); *In re Nat'l Gypsum Co.*, 118 F.3d at (noting that the "discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt"); *See also In re Gervin*, 337 B.R. 854, 857–58 (Bankr. W.D. Tex. 2005); *In re Harris*, 297 B.R. 61, 70–71 (Bankr. N.D. Miss. 2003). In a recent decision dealing with chapter 13 mortgage payments, the Fifth Circuit advised bankruptcy courts that they may use their § 105 authority to prohibit creditor abuses of the chapter 13 process. *Campbell v. Countrywide Home Loans, Inc.*, --- F.3d ----, 2008 WL 3906382 at *7 & n.1 (5th Cir. Aug. 26, 2008).

Courts have used § 105 to remedy violations of confirmed plans.  A bankruptcy court's authority under § 105 to enforce its own orders cannot be reasonably questioned. *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.") (quoting *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)); *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d at 613 ("Reading [§105(a)] under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code."); *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, (S.D. Tex. 2000) ("The Bankruptcy

Court's finding of civil contempt and that Court's exercise of discretion to impose sanctions to compensate O'Quinn for Debtor's repeated and blatant violations of the Bankruptcy Court's various orders are not clearly erroneous."); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 317 (Bankr. S.D. Tex. 2007) (holding that "the Defendant has violated the Court's order approving the Amended Plan, and the Defendant may be sanctioned for civil contempt"); *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 669 (Bankr. W.D. N.C. 2000).

This Court recently considered the extent to which the Bankruptcy Code provides relief for violations of a confirmed plan. *In re Padilla*, 379 B.R. at 643. The Court also held that the Court had authority under § 105 to enforce an order confirming a chapter 13 plan. *Id*. Based on the precedent cited above, the Court declines to revisit *In re Padilla* on this issue.

Bankruptcy Courts may not use § 105 to create new substantive rights or contravene specific Code provisions. *U.S. v. Waindel (In re Waindel)*, 65 F.3d 1307, 1309 (5th Cir. 1995). The Court previously considered the extent to which a remedy for alleged improper charging and collection of Reimbursable Expenses would be consistent with the Bankruptcy Code. *In re Padilla*, 379 B.R. 643. In *Padilla*, the defendant mortgage lender contended that any holding that prohibited a mortgage lender from charging and collecting Reimbursable Expenses without court approval would conflict with § 1322(b)(2). *Id*. at 657. The Court rejected the argument, holding:

> However, Plaintiffs correctly note that *Nobelman* did not hold that § 1322(b)(2) immunized all mortgage rights from the effects of the Bankruptcy Code. The automatic stay limits a lender's ability to exercise contractual foreclosure rights. *Nobelman*, 508 U.S. at 330, 113 S.Ct. 2106. Additionally, § 1322(b)(5) authorizes debtors to cure defaults over time through a plan, despite contrary provisions within a lender's contract. *Id*. Thus, specific provisions like the automatic stay and § 1322(b)(5) may limit a lender's ability to exercise their rights. *Id*. However, those limits "are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition." *Id*.

36

Section 1322(b)(2) prohibits a *plan* from modifying a mortgage lender's contract rights. Section 1322(b)(2) does not override every other provision of the Bankruptcy Code.

A prohibition against creating new substantive rights is not a direction to gut § 105 in a manner that precludes *enforcement* of substantive rights.  Allowing debtors to seek damages for violations of Court orders confirming chapter 13 plans and the Bankruptcy Code provisions implemented by the Court *enforces* the rights.  This use of § 105 creates no rights.  Rather, this use is a *remedy* to *enforce* rights explicitly provided for in the Bankruptcy Code and the promised fresh start.  Consistent with § 105, the remedy may take the form of a private cause of action.  Section 105's plain language authorizes bankruptcy courts to issue any judgments necessary *or* appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).[14]

Bankruptcy Code provisions, Bankruptcy Rules, and Court orders may not be violated without recourse.  The Court need not create an implied private right of actions to remedy such violations.  Congress created a remedy through § 105(a).  Precedent leaves no question that this Court may remedy such violations through its inherent contempt authority and statutory authority under § 105. [15]

---

[14] The Court makes no conclusion as to what form the proper remedy should take if Plaintiffs allegations are proven true.

[15] The Court notes that other Circuits have held that § 105 may not be used to enforce code provisions other than the automatic stay. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000).  The *Walls* and *Pertuso* Courts held that debtors claiming violation of the discharge injunction could seek relief only through a contempt proceeding, not a private cause of action seeking damages. *Id*. The Courts assumed that a bankruptcy Court's § 105 authority was limited to civil contempt remedies. *Id*. Accordingly, a complaint seeking all the damages available in a private action could not be brought under § 105. *Id*.  Neither case is binding on this Court.  This Court disagrees with the *Walls* and *Pertuso* courts and adopts the holding of the First Circuit in *Bessette*. *Bessette*, 230 F.3d 439. The First Circuit's holding is more consistent with the Supreme Court's *Marrama* decision, the Fifth Circuit's *Campbell* decision, and the plain language of § 105.

**C. Disgorgement**

In addition to violations of the orders confirming Plaintiffs plans and §§ 362 and 524, Plaintiffs seek relief for violations of §§ 506, 1322(b)(5), 1322(a)(1), 1326(c), 1327(a), 1328, and Bankruptcy Rule 2016.

The Court has broad authority to order disgorgement of monies obtained in violation of code provisions. *In re Padilla*, 379 B.R. at 667–68. To the extent that Plaintiffs seek relief for violation of Bankruptcy Rule 2016 and court orders approving chapter 13 plan, Plaintiffs may be entitled to disgorgement of monies obtained through those violations.

**Conclusion**

Pursuant to the Court's July 8 and July 18 Orders, the Court reserves judgment on Countrywide's third argument raised in its Motion to Dismiss: whether Plaintiffs have stated claims for violations of the Bankruptcy Code or Rules.   For the reasons set forth above, Countrywide's Motion to Dismiss is denied in all other respects.

SIGNED September 18, 2008.

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE