

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ENTERED
10/06/2010

| | | |
|---|---|---|
| IN RE: § | | |
| YDALIA RODRIGUEZ; aka RODRIGUEZ; § | Case No. 02-10605 | |
| aka PARDO, § | | |
|     Debtor(s). § | | |
| § | Chapter 13 | |
| § | | |
| YDALIA RODRIGUEZ, *et al*, § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 08-01004 | |
| § | | |
| COUNTRYWIDE HOME LOANS, INC., § | | |
|     Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION ON RECONSIDERATION

As set forth below, the Court denies Countrywide's Motion for Reconsideration of Certification Order.

### Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  *See also Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn),* 609 F.3d 748, 754 (5th Cir.2010) ("[B]ankruptcy court has authority to certify a class action of debtors whose petitions are filed within its judicial district provided the prerequisites for a class under Rule 23 are satisfied.").  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

### Background

On July 21, 2010, the Court issued a Certification Order (Doc. No. 353) granting, in part, and denying, in part, Plaintiffs Motion for Class Certification.  *See In re Rodriguez*, 432 B.R. 671 (Bankr. S.D. Tex. 2010).  The order certified a class comprised of those individuals:

> (a) who owed funds on a Countrywide serviced note as of February 26, 2008;
>
> (b) who have not fully paid the relevant mortgage note, fees, or costs owed to Countrywide, its successors and assigns;
>
> (c) who filed a chapter 13 proceeding in the United States Bankruptcy Court for the Southern District of Texas on or before October 15, 2005 and have confirmed chapter 13 plans that treated mortgages serviced by Countrywide; and
>
> (d) as to whom Countrywide has assessed a fee or cost governed by Rule 2016(a), attributable to a time after the filing of a bankruptcy petition and before the date on which the individual received a chapter 13 discharge, unless such fee or cost was approved in a Bankruptcy Court order.

Cert'n Order 1.

The Certification Order only certified the claims for injunctive relief and provided that the Court would issue the following injunctive relief ("Proposed Injunction") if the class succeeds at trial:

> The Court certifies the above Rule 23(b)(2) class only with regard to its claim for injunctive relief. If the class is successful at trial on the merits, the Court is prepared to issue the following injunction: Countrywide shall not collect or attempt to collect any fees that (1) were incurred during the pendency of a class member's bankruptcy case, (2) are governed by Rule 2016(a), and (3) have not yet been authorized pursuant to Rule 2016(a).
>
> The Court denies certification of all Plaintiffs' claims for damages under Rule 23(b)(2) and (b)(3).

*Id.*

On August 4, 2010, Countrywide filed this Motion for Reconsideration of Certification Order (Doc. No. 362) under Federal Rule of Civil Procedure 59(e),[1] as incorporated by Federal Rule of Bankruptcy Procedure 9023.[2] Countrywide seeks reconsideration on the theory that the

---

[1] Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

[2] Rule 9023 provides: "Except as provided in this rule and Rule 3008, Rule 59 F. R. Civ. P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023.

claim for injunctive relief is mooted by a consent judgment ("Consent Judgment"), which was agreed to by Countrywide and the Federal Trade Commission and subsequently entered by the U.S. District Court for the Central District of California on June 15, 2010.

## Analysis

A motion for reconsideration under Rule 59(e), which "calls into question the correctness of a judgment," is an "extraordinary remedy that should be used sparingly." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citations omitted). The Fifth Circuit has made clear that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rather, Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989)).

1. **Countrywide's Reconsideration Argument**

Countrywide argues that reconsideration is appropriate because the relief provided by the Consent Judgment satisfies all of the relief available to the class under the Proposed Injunction. Mot. for Recons. 2 ("The Proposed Injunction set forth in the Certification Order has been effectively granted by the Central District of California."). Thus, according to Countrywide, the Consent Judgment, which applies nationwide, has mooted all of the class's claims.

Countrywide relies on the following sections of the Consent Judgment in support of its argument:

### VIII.

> It is FURTHER ORDERED that, within two-hundred seventy (270) days of the date of entry of this Order (or as otherwise agreed to by Commission counsel),

Defendants, their officers, employees, agents, representatives . . . are hereby permanently restrained and enjoined, in connection with the Servicing of any Loan for a consumer in Chapter 13 Bankruptcy, from failing to provide the consumer and the Chapter 13 trustee with an informational notice on a monthly basis, in writing and at no cost to the consumer or the trustee, that contains the following information in a Clear and Prominent Manner:

    A.    the unpaid principal balance;

    B.    the post-petition Monthly Payment amount;

    C.    if there are changes in the post-petition Monthly Payment amount, the reason for and the amount of the change;

    D.    a complete itemization of each and every Fee assessed during the prior month, including the amount of each Fee, a description of each Fee, and the date that each Fee was assessed;

    E.    a complete itemization of all payments received during the prior month, a total of any amounts held in suspense or otherwise not applied to the Loan account, and an itemization and description of any Fee amounts that remain outstanding on the Loan account; and

    F.    the toll-free telephone number and address for the consumer and the trustee to use to contact the Defendants with Loan account questions.

*Provided, however,* that nothing in this Section shall require Defendants to do anything prohibited by the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or any local rule or court order in a Chapter 13 Bankruptcy.

## IX.

IT IS FURTHER ORDERED that Defendants, their officers, employees, agents, representatives . . . are hereby permanently restrained and enjoined, in connection with the Servicing of any Loan for a consumer in Chapter 13 Bankruptcy, from failing to provide the consumer and the Chapter 13 trustee with an informational notice on an annual basis, in writing and at no cost to the consumer or the trustee, that discloses, Clearly and Prominently, the amount and nature of any accrued Escrow Shortage and/or Escrow Deficiency. Such notice shall be in a form consistent with the requirements of 24 C.F.R. § 3500.17 and may be provided along with the monthly informational notice required under Section VIII of this Order. *Provided, however,* that nothing in this Section shall require Defendants to do anything prohibited by the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or any local rule or court order in a Chapter 13 Bankruptcy.

**X.**

> IT IS FURTHER ORDERED that Defendants, their officers, employees, agents, representatives . . . are hereby permanently restrained and enjoined, in connection with the Servicing of any Loan that incurred any Fee, Escrow Shortage, and/or Escrow Deficiency during a Chapter 13 Bankruptcy, from collecting any such Fee, Escrow Shortage, and/or Escrow Deficiency after Defendants obtain relief from the bankruptcy stay or, if relief from stay is not sought or granted, after the debtor is discharged or the bankruptcy case is dismissed, unless Defendants (1) obtained specific court approval for the charges during the Chapter 13 Bankruptcy case, or (2) provided to the consumer the notices required under Sections VIII and IX of this Order.

*Fed. Trade Comm'n v. Countrywide Home Loans, Inc.*, No. 10-4193 (C.D. Cal. June 15, 2010).

Therefore, under the Consent Judgment, Countrywide is enjoined from collecting fees incurred during a chapter 13 bankruptcy unless Countrywide "(1) obtained specific court approval for the charges during the Chapter 13 Bankruptcy case, or (2) provided to the consumer the notices required under Sections VIII and IX of [the Consent Judgment]." *Id.*

### 2. The Mootness Inquiry

The mootness doctrine is known as "the doctrine of standing in a time frame." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). The doctrine holds that "the requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Id.* (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)). Thus, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit [generally will] render that action moot." *Id.*

Countrywide asserts that the appropriate mootness inquiry in this case is to consider whether "there is a realistic prospect that the violations alleged in [Plaintiffs'] complaint will continue notwithstanding the consent decree." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008). Plaintiffs argue, on the other hand, that the correct mootness

inquiry is the more stringent "voluntary cessation" test, which asks whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (citations omitted). Since the Court finds that Countrywide's argument fails to satisfy either inquiry, the Court need not determine which inquiry is more appropriate under the circumstances of this case. Nevertheless, for the remainder of this Memorandum Opinion, the Court will assume, without deciding, that the less stringent "realistic prospect" inquiry governs the Court's analysis.

### 3. Background of the Rule 2016(a) Violation Alleged by Plaintiffs

Given the "the realistic prospect" inquiry's focus upon the allegations in the complaint, the Court finds it useful to review the history of Plaintiffs' allegations. The review demonstrates that Plaintiffs' Rule 2016(a) claim has become the focal point of this class action.

As the Court previously stated,

> At the outset of the case, Plaintiffs alleged that Countrywide employed numerous, systemic practices that *violated various provisions of the United States Bankruptcy Code*. These practices allegedly culminated in Countrywide's impermissible attempts to foreclose on the Plaintiffs' homes. After this Court's rulings on Countrywide's Motion to Dismiss (Doc. No. 63) and Motion for Summary Judgment (Doc. No. 287), and the United States District Court's decision on Countrywide's Motion to Withdraw the Reference, the dispute has been *considerably narrowed.*

*Rodriguez*, 432 B.R. at 678 (emphasis added). In fact, by the time of the class certification hearing in December 2009, this class action had become primarily about the role of Bankruptcy Rule 2016(a). *See In re Rodriguez*, 421 B.R. 356 (Bankr. S.D. Tex. 2009) (granting summary judgment in favor of Countrywide on all Plaintiffs' claims except those alleging that Countrywide violated (i) Rule 2016(a), and (ii) Plaintiffs' bankruptcy plans and the orders confirming the plans).

In its June 21, 2010, the Court summarized both the settled and unanswered questions involving Rule 2016(a):

> At the summary judgment stage, the Court rejected Countrywide's contention that Rule 2016(a) was inapplicable to Countrywide's post-petition and post-discharge collection practices. *See Rodriguez,* 421 B.R. at 372-80. In essence, the Court held that Countrywide may not legally ignore Rule 2016(a). However, the Court did not resolve Rule 2016(a)'s scope. The question of Rule 2016(a)'s scope, which must be resolved at trial, is a common question of law that will affect all class members.
>
> More specifically, the Court must determine whether Rule 2016(a) applies to every fee and cost Countrywide has assessed against debtors in bankruptcy, or only to certain fees and costs. *See also Wilborn,* 609 F.3d at 755-56 ("There is disagreement among the bankruptcy courts as to the scope of the requirement under § 506(b) and Rule 2016 for lenders to obtain court approval before assessing contractually-allowed fees."). Rule 2016(a) provides:
>
>> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.
>
> FED. R. BANKR.P. 2016(a). Countrywide's counsel has previously acknowledged on the record that Rule 2016(a) applies to fees for professional services; counsel stated, "I think if you were going to try to collect a fee from the estate, a fee for professional services, it would be subject to 2016." *Rodriguez,* 421 B.R. at 379. This is consistent with the Court's conclusion and it is therefore safe to say that attorney's fees are subject to Rule 2016(a). However, the Court must still decide whether other fees and costs-such as the inspection fees charged to the named Plaintiffs-fall within Rule 2016(a)'s purview. In order to do so, the Court must interpret the meaning of "entity," "services," and "necessary expenses" within Rule 2016(a).
>
> Furthermore, the Court must determine the extent to which Rule 2016(a) applies to fees assessed by Countrywide (1) after a case is dismissed from bankruptcy, and (2) before the dismissal order is vacated by the bankruptcy court. As set forth in note 13 above, the Court is quite skeptical that a vacated order would have legal significance. Nevertheless, this issue must be fully briefed by the parties and the Court will consider further argument on this issue.

*Rodriguez,* 421 B.R. at 695-96.

Furthermore, the Certification Order makes clear that, at this point in the case, Plaintiffs' fundamental, unresolved grievance stems directly from the allegation that Countrywide's collection practices violated Rule 2016(a). First, in order to be a member of the certified class, a debtor must have been "*assessed a fee or cost governed by Rule 2016(a)*, attributable to a time after the filing of a bankruptcy petition and before the date on which the individual received a chapter 13 discharge, *unless such fee or cost was approved in a Bankruptcy Court order*." Cert'n Order 1 (emphasis added). Second, the Proposed Injunction, which is the only relief available to Plaintiffs, is based entirely upon Rule 2016(a): "Countrywide shall not collect or attempt to collect any fees that (1) were incurred during the pendency of a class member's bankruptcy case, (2) are governed by Rule 2016(a), and (3) have not yet been authorized pursuant to Rule 2016(a)." *Id.*

### 4. Plaintiffs' Rule 2016(a) Allegation and the "Realistic Prospect" Inquiry

The Court must ask whether "there is a realistic prospect that the [Rule 2016(a)] violations alleged in [Plaintiffs] complaint will continue notwithstanding the consent decree." *See Envtl. Conservation Org.*, 529 F.3d at 528. The Court finds that the answer is yes.

At the time the class was certified on July 21, 2010, the following issues were at the center of this controversy:

i. Whether the Proposed Injunction will be issued against Countrywide; and

ii. The scope of Rule 2016(a).

Neither one of the fundamental issues is resolved by the Consent Judgment.

The Consent Judgment overlaps with the Proposed Injunction. However, one key distinction exists. Under the Consent Judgment, Countrywide may choose one of two avenues for collecting fees incurred during a bankruptcy case. Countrywide may collect fees through

*either* (1) Rule 2016(a) bankruptcy court authorization, *or* (2) notice to the Debtor of the fees (according to specific notice procedures set forth in the Consent Judgment). Thus, the second avenue enables Countrywide to continue to collect fees incurred during a bankruptcy case without any court authorization. No such avenue exists under the Proposed Injunction. On the contrary, if the Proposed Injunction is issued, Countrywide will be mandated to seek fees in accordance with Rule 2016(a).

> The Court has already found that notice to debtors is not at issue in this case:
>
> The disgorgement issues in this case are distinguishable from *Wilborn* on two levels. First, *the only issue in this case is whether the fees charged were authorized by a bankruptcy court*. In *Wilborn,* the bankruptcy court considered additional issues, including *whether the fees were* (1) reasonable, (2) *disclosed to the debtors*, and (3) agreed to by the debtors. *Id.* Here, the additional issues presented in *Wilborn* simply do not exist: the only issue is whether bankruptcy court orders authorized certain fees. This involves a less complex and more objective inquiry.

*Rodriguez*, 432 B.R. at 703 (emphasis added). It is quite possible, however, that the imposition of the notice procedures within the Consent Judgment will be the only benefit that all debtors nationwide derive from the Consent Judgment. If Countrywide has the option to choose between providing notice to debtors or obtaining Rule 2016(a) bankruptcy court authorization, it is quite possible that Countrywide would seek fees through the notice procedures rather than pursuant to Rule 2016(a). As stated above, this case is primarily about Plaintiffs' desire to force Countrywide to comply with Rule 2016(a) authorization before collecting fees incurred during Plaintiffs' bankruptcies. There is simply nothing requiring Countrywide to seek fees pursuant to Rule 2016(a) in the Consent Judgment. Thus, there is a realistic prospect that the Rule 2016(a) violation alleged by Plaintiffs will continue despite the Consent Judgment.

Furthermore, even if the Consent Judgment mandated compliance with Rule 2016(a), the Consent Judgment still fails to provide all the relief available under the Proposed Injunction.

9 / 12

Specifically, the Consent Judgment fails to provide any relief to those Plaintiffs who had payments misapplied by Countrywide. The Proposed Injunction, on the other hand, requires Countrywide to correct any payment misapplications:

> The Court also finds that the proposed injunction is properly tailored to protect not only those class members who were charged unauthorized fees but also those who had payments misapplied by Countrywide. More specifically, the injunction would encompass the scenario where (1) Countrywide charged unauthorized fees, (2) Countrywide subsequently collected the unauthorized fees, at least in part, by improperly applying funds received from a class member or bankruptcy trustee, and (3) the class member has not yet paid the mortgage in-full. Any funds that Countrywide has previously and incorrectly applied towards the satisfaction of unapproved fees or expenses should actually have been applied to other, proper amounts that Countrywide is permitted to collect-i.e. the mortgage debt. The $92 Countrywide admits improperly applying towards unauthorized inspection fees in Rodriguez's case provides a useful example of this scenario. Assuming inspection fees are governed by Rule 2016(a), Countrywide should have applied the $92 it received from Rodriguez to amounts Countrywide was permitted to collect from Rodriguez. If the Court issues the proposed injunction, it would enjoin Countrywide from collecting Rodriguez's loan balance without crediting the $92 to a permissible charge. In essence, the injunction would require Countrywide to correct the misapplied payments before seeking to collect a class member's loan balance.

*Rodriguez*, 432 B.R. at 708. Thus, the Court finds that there is not only a realistic prospect, but a virtual certainty, that prior payment misallocations (such as those in Rodriguez's case) will remain uncured despite the Consent Judgment.

Accordingly, the Court denies Countrywide's Motion for Reconsideration of the Certification Order.

### 5. Propriety of Filing a Rule 59(e) Motion

Finally, the Court doubts whether Countrywide's motion was properly brought under Rule 59(e). The Court is concerned that Countrywide's mootness argument does not fit within the narrow purpose for which Rule 59(e) exists.

The Fifth Circuit has made clear that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or *raised before the entry of judgment*." *Templet*, 367 F.3d at 479 (5th Cir. 2004) (citing *Simon*, 891 F.2d at 1159)) (emphasis added). The Consent Judgment was entered on June 15, 2010 and the Certification Order was not issued until July 21, 2010. Thus, Countrywide could have filed a brief alerting the Court of the Consent Judgment (and of its implications concerning mootness) before the Certification Order was issued. Accordingly, the mootness theory could have been offered or raised before entry of the judgment.

The Court's concern about the issue is heightened by the fact that Countrywide did file a Motion for Leave to File Supplemental Authority in Support of Countrywide's Opposition to Plaintiff's Motion for Class Certification (Doc. No. 349) on June 24, 2010. Countrywide filed the motion after the Fifth Circuit released its opinion in *Wilborn* in order to present the Court with newly established precedent that, according to Countrywide, strengthened its position. *See Wilborn*, 609 F.3d at 748-757. Accordingly, the Court sees no reason why Countrywide could not have raised the mootness issue at the same time that it raised the *Wilborn* precedent.

Countrywide nevertheless claims that, due to the broad relief sought by Plaintiffs, the mootness argument was not apparent until after the Certification Order was issued on July 21, 2010. Countrywide argues that the mootness argument became apparent after the Certification Order narrowed the relief available to Plaintiffs. The Court is not persuaded by this argument. As set forth above, this dispute had been considerably narrowed by the time the Court held the certification hearing. Most of the relief sought by Plaintiffs, which was broadly set forth in their complaint, had been denied at the summary judgment stage. Furthermore, the Plaintiffs' ability to recover damages was greatly inhibited by the *Wilborn* opinion, with which Countrywide was

clearly familiar.  Thus, the Court has trouble understanding why the mootness argument could not have been raised immediately after *Wilborn's* release, which was well before the issuance of the Certification Order.

"Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet*, 367 F.3d at 479 (5th Cir. 2004) (quoting *Waltman,* 875 F.2d at 473).  The Court fails to see how Countrywide's motion fits within Rule 59(e)'s narrow purpose.  Nevertheless, since the Court denies Countrywide's motion on its merits, the Court need not rule on whether Countrywide's mootness theory was properly raised under Rule 59(e).

### 6. Conclusion

For the reasons set forth above, the Court denies Countrywide's Motion for Reconsideration of Certification Order.  A separate order consistent with this Memorandum Opinion will be issued.

SIGNED **October 5, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE