

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

<table>
<tr><td>IN RE:</td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td>CASE NO: 02-10605</td></tr>
<tr><td>YDALIA RODRIGUEZ; aka RODRIGUEZ;</td><td>§</td><td>CHAPTER  13</td></tr>
<tr><td>aka PARDO</td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>Debtor(s).</td><td>§</td><td>JUDGE ISGUR</td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>YDALIA RODRIGUEZ, <em>et al</em></td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>Plaintiff(s),</td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>vs.</td><td>§</td><td>ADVERSARY NO. 08-01004</td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>COUNTRYWIDE HOME LOANS, INC.</td><td>§</td><td></td></tr>
<tr><td></td><td>§</td><td></td></tr>
<tr><td>Defendant(s).</td><td>§</td><td></td></tr>
</table>

**ENTERED**
**04/23/2013**

<u>MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs' Motion for Summary Judgment (ECF No. 408) is granted, in part, and denied, in part.

## Background

### A.    Summary of Dispute

This lawsuit concerns whether Countrywide Home Loans, Inc. (now BAC Home Loans Servicing, LP) ("Countrywide"), impermissibly attempted to foreclose on homes owned by individuals who had recently completed chapter 13 bankruptcy cases.  Plaintiffs allege that Countrywide sought foreclosure despite the Plaintiffs' completion of their chapter 13 plans that cured all of their home mortgage defaults.  Plaintiffs filed this adversary proceeding on February 26, 2008.

This Court issued a Memorandum Opinion on September 18, 2008 regarding Countrywide's Motion to Dismiss under Rule 12(b)(6). ECF No. 127. The background of the case is set forth in the 2008 Memorandum Opinion and is incorporated by reference.

Countrywide filed a Motion for Summary Judgment on September 29, 2009. ECF No. 287. Plaintiffs' filed their Response on October 19, 2009. ECF No. 292. This Court issued a Memorandum Opinion on December 9, 2009, granting, in part, and denying, in part, Countrywide's Motion for Summary Judgment. ECF No. 320.

The Court granted summary judgment on Plaintiffs' claims for (1) violation of the discharge injunction; (2) violation of the automatic stay; and (3) breach of contract.

Summary judgment was denied with respect to Plaintiffs' claims for (1) violation of the plan or confirmation orders; and (2) violation of Rule 2016.

Summary judgment was granted, in part, and denied, in part on the question of damages. Countrywide claimed that because the foreclosures were not completed, there was an absence of damages. ECF No. 320 at 36. The Court granted summary judgment to the extent of actual damages alleged from a successful foreclosure, but denied summary judgment as to all other damages. ECF No. 320 at 36.

Plaintiffs filed their Amended Motion for Class Certification on December 2, 2009. ECF No. 314. Countrywide filed its Opposition on December 8, 2009. ECF No. 319. On July 21, 2010, the Court issued its Memorandum Opinion Granting, In Part, and Denying, In Part, Plaintiffs' Motion for Class Certification. ECF No. 352. The Court granted class certification under Fed. R. Civ. P. 23(b)(2) for Plaintiffs' claims for injunctive relief, and denied class certification on all damages claims. ECF No. 352 at 38. The Court determined that the proposed injunction would state that, "Countrywide shall not collect or attempt to collect any fees that (1)

were incurred during the pendency of a class member's bankruptcy case, (2) are governed by Rule 2016(a), and (3) have not yet been authorized pursuant to Rule 2016(a)." ECF No. 352 at 51.  Countrywide filed its Motion for Reconsideration of Certification Order, on August 4, 2010.  ECF No. 360.

On June 15, 2010, the United States District Court for the Central District of California entered a Consent Judgment between Countrywide and the Federal Trade Commission. ECF No. 360 at 3.  Countrywide argued that the Consent Judgment rendered the need for an injunction in the instant case moot because the consent judgment enjoined the collection attempts proscribed by this Court's proposed injunction.  ECF No. 360 at 3.  Countrywide asserted that the appropriate mootness inquiry was whether "there is a realistic prospect that violations alleged by Plaintiffs will continue, notwithstanding the consent decree."  ECF No. 371 at 5.  Plaintiffs argued that the appropriate mootness standard was the "voluntary cessation test," which determines whether it is absolutely clear that the allegedly wrongful conduct could not reasonably be expected to recur.  ECF No. 371 at 5-6.  The Court denied Countrywide's Motion for Reconsideration, finding that Countrywide failed to satisfy either inquiry.  ECF No. 371 at 6. Countrywide appealed the class certification order, including the mootness issue.  The Fifth Circuit affirmed this Court's decision on September 12, 2012.  ECF No. 400.

Plaintiffs filed this Motion for Summary Judgment on January 21, 2013 (ECF No. 408), on three remaining legal issues:

1.  Whether Rule 2016(a) applies to expenses, such as inspection fees, as well as to legal fees;

2.  Whether fees and expenses imposed following dismissal are subject to Rule 2016(a) in a situation where a debtor's case has been dismissed, but the order of dismissal is vacated after the fees were incurred; and

3.     Whether Plaintiffs are entitled to their legal fees and costs associated with bringing this lawsuit.

Countrywide filed its Opposition to Plaintiffs' Motion for Summary Judgment on February 19, 2013.  ECF No. 411.

Plaintiffs filed their Amended Reply on March 14, 2013.  ECF No. 426.

**B.     Named Plaintiffs**

**a.     The Rodriguez Case**

Ms. Rodriguez filed her chapter 13 petition on August 2, 2002.  ECF No. 352 at 7. Countrywide filed an original proof of claim listing an $8,919.38 pre-petition mortgage deficiency.  ECF No. 352 at 7.  Ms. Rodriguez's chapter 13 plan was confirmed on November 7, 2002.  ECF No. 352 at 7.  Countrywide filed a motion for relief from stay on March 26, 2003. ECF No. 352 at 7.  The motion was resolved by an agreed order stipulating to a post-petition deficiency of $3,051.32.  ECF No. 352 at 7. When Ms. Rodriguez received her discharge on August 27, 2007, both the pre-petition arrearage and post-petition deficiency had been satisfied. ECF No. 352 at 8.  On November 15, 2007, Countrywide sent Ms. Rodriguez a notice of default stating that she owed $8,837.20 in post-petition mortgage payments and various fees. ECF No. 352 at 8.  The notice stated that Countrywide would accelerate the debt and foreclose on Ms. Rodriguez's home if she failed to cure the deficiency.  ECF No. 352 at 8.

Countrywide claims that nearly all of the $8,837.20 arose from missed or partial monthly payments which were inadvertently excluded from notices of default sent during the pendency of Ms. Rodriguez's bankruptcy.  ECF No. 352 at 8.  Countrywide also admits that $127.78 of the $8,837.20 was for late fees.  ECF No. 352 at 8.  Countrywide admitted to charging $172.00 in unauthorized inspection fees, and misapplying $92.00 from a monthly mortgage payment during the pendency of Ms. Rodriguez's case.  ECF No. 352 at 9.  The $92.00 should have been applied

to the mortgage balance, but was instead applied to undisclosed inspection fees. ECF No. 352 at 9.

### b.    The Herreras

The Herreras filed a joint petition on November 29, 2001.   ECF No. 352 at 9. Countrywide filed a proof of claim listing a total arrearage of $10,432.87.   ECF No. 352 at 9. The Herreras' chapter 13 plan was confirmed on April 11, 2002.   ECF No. 352 at 9.   The Herreras received a discharge on August 24, 2007.   ECF No. 352 at 10.   On December 17, 2007, Countrywide sent a notice of default stating that the Herreras owed $8,327.00 in unpaid arrearages and $238.67 in outstanding fees.   ECF No. 352 at 10.   Countrywide charged the Herreras undisclosed fees during their bankruptcy case.   ECF No. 352 at 10.   Countrywide charged the Herreras $200.00 in connection with filing Countrywide's proof of claim. ECF No. 352 at 10.    Countrywide also charged numerous undisclosed inspection fees. ECF No. 352 at 10.

### c.    The Morenos

The Morenos filed a chapter 13 petition on October 18, 2001.   ECF No. 352 at 10. Countrywide filed a proof of claim on November 30, 2001 for $4,641.57.   ECF No. 352 at 10. The Morenos confirmed their amended plan on February 22, 2002.   ECF No. 352 at 10.   On March 13, 2003, the Court dismissed the Morenos' case for failure to make plan payments. ECF No. 352 at 11.  The Court vacated the dismissal order on April 3, 2003.  ECF No. 352 at 11. The case was dismissed again on January 22, 2004.   ECF No. 352 at 11.   This dismissal was vacated on February 26, 2004.   ECF No. 352 at 11.   The Morenos paid their pre-petition mortgage arrearage and received a discharge on December 27, 2006.  ECF No. 352 at 11.

On December 3, 2007, Countrywide sent the Morenos a notice of default that included $2,719.53 in pre-discharge fees.  ECF No. 352 at 11.  Countrywide claims that $1,231.98 of this was incurred during the two periods after the Morenos' case was dismissed and prior to the orders vacating dismissal.  ECF No. 352 at 11.  Countrywide provides no justification however for its attempts to collect the remaining $1,487.55.  ECF No. 352 at 11.

Countrywide admits that it charged an unauthorized $200.00 proof of claim filing fee shortly after the Morenos filed their petition.  ECF No. 352 at 12.  In a March 5, 2003 agreed order, Countrywide was authorized to charge $705.00 in attorney's fees but instead charged $1,160.00 in attorney's fees over the course of the bankruptcy.  ECF No. 352 at 12.  The evidence also indicates that the Morenos were charged unauthorized inspection fees and other unauthorized fees.  ECF No. 352 at 12.

## Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under § 157(b)(2).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the

outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

**A.     Scope of Rule 2016**

Rule 2016(a) provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested…The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

"Under the plain language of Rule 2016, a mortgage lender must file a Rule 2016 application before collecting any reimbursable fees and costs while a chapter 13 case remains pending."  ECF No. 320 at 22 (citing, *Cano v. GMAC Mortgage Corp. (In re Cano)*, 410 B.R. 506, 532 (Bankr. S.D. Tex. 2009).

The Court previously held that the question of whether Rule 2016 applies in this case has been resolved and Rule 2016 is now the "law of the case."  ECF No. 320 at 34.  Rule 2016 applies to collection of fees from post-confirmation earnings of the debtor because such earnings are property of the estate.  ECF No. 320 at 32.

Additionally, the Court found that Rule 2016 applies to fees that were incurred during the pendency of the case that Countrywide attempted to collect once the case was terminated. ECF No. 320 at 35.  Countrywide argued that Rule 2016 was inapplicable once an estate no longer existed.  ECF No. 320 at 34.  The Court rejected this argument and held that unapproved fees may not be collected after the case is closed.  ECF No. 320 at 35.

Based on the Court's prior rulings, which were affirmed by the district court and the Fifth Circuit, the primary question remaining is whether Rule 2016(a) applies to every fee and cost Countrywide has assessed against debtors in bankruptcy, or only to certain fees and costs. Countrywide conceded, and the Court found, that legal fees are subject to Rule 2016(a). ECF No. 352 at 31.  However, the Court must still decide whether other fees and costs—such as the inspection fees charged to the named Plaintiffs—fall within Rule 2016(a)'s purview. ECF No. 352 at 31.

"Reimbursement" is defined in Black's Law Dictionary as repayment or indemnification. BLACK'S LAW DICTIONARY 1399 (9th ed. 2009).  Webster's Dictionary defines "reimburse" as to

pay back to someone or to make restoration or payment of an equivalent.  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 993 (9th ed. 1990).

With these common-sense definitions in mind, the Court turns to the specific fees that Countrywide charged to the named Plaintiffs' accounts.

### a.       Inspection Fees

Inspection fees are governed by Rule 2016.  Either Countrywide employed a third party to conduct inspections on properties securing Plaintiffs' mortgages, or a Countrywide employee conducted an inspection and some internal cost accrued.  In either instance, the inspection fees are reimbursable expenses, as a tangible cost was incurred when conducting an inspection.  A third party either had to be employed to travel to Plaintiffs' residences and conduct the inspections, or a Countrywide employee exerted time and resources to travel to such residences and conduct an inspection.  Regardless of how small the cost incurred, such expenses can be ascertained by the time expended and expenses incurred.  Accordingly, such costs are governed by Rule 2016, and Countrywide is seeking reimbursement for inspection fees when it imposes a charge against its borrowers.

Countrywide is able to collect these fees because the terms of Countrywide's loan documents allow Countrywide to recover expenses incurred by it to protect its interest in its collateral or its rights under the note.  Accordingly, these fees are necessarily reimbursements that are governed by Rule 2016.

### b.       Late Fees

Late fees are not governed by Rule 2016 where they are merely a contractual obligation, and not a reimbursable expense.  Both the Herrera and Rodriguez Notes impose a four percent late charge if Countrywide does not receive the full monthly payment by the end of fifteen

calendar days after such payment was due.[2]  Such a late charge is not a reimbursement for an expense incurred by Countrywide, but is merely a term of the Note that Plaintiffs agreed to pay.

In these cases, the late charge is a fee imposed once a condition (failure to receive the full monthly payment by the end of fifteen calendar days after such payment was due) is met.  As such, these late charges are not a "reimbursement" for any expense incurred on Countrywide's behalf, and are not governed by Rule 2016.

### c.     Other Fees

Inspection fees and late fees are not an exhaustive list of the fees that may have been incurred during the pendency of a class member's bankruptcy case.  The treatment of inspection fees and late fees is instructive in determining which fees will be governed by Rule 2016.  Any fees that are the result of a tangible cost incurred by Countrywide, because the terms of Countrywide's loan documents allow Countrywide to recover expenses incurred by it to protect its interest in its collateral or its rights under the note, are governed by Rule 2016.  Any fees, like late fees provided for in a Note or Deed of Trust, that are not conditioned on the incurrence of an expense, are not "reimbursable" expenses governed by Rule 2016.

## B.     Fees Incurred Between Dismissal and Vacatur of Dismissal

Bankruptcy courts, as courts of equity, can modify or vacate a previous order so long as no intervening rights have vested in reliance on the order.  *Thomas v. United States (In re Thomas)*, 223 Fed.Appx. 310, 314 n. 4 (5th Cir. 2007) (quoting *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739-40 (9th Cir. 1990).

---

[2] The Moreno Note is silent regarding late fees, but the Morenos do not specifically claim that they were charged late fees.

When courts vacate an order, it restores the parties to the position they were in prior to the issuance of the vacated order—it is as if the order had never been issued. *Murrell, et al. v. Vega (In re Vega)*, 2000 WL 425012, at *2 (9th Cir. April 19, 2000).

Countrywide claims that some of the fees and expenses imposed on the Morenos were imposed after dismissal but prior to the bankruptcy court's order vacating dismissal. ECF No. 408 at 31. Countrywide uses this fact to argue that fees imposed during this time are not governed by Rule 2016(a).

The Court disagrees. The effect of the order vacating dismissal was to put the Morenos and Countrywide in the same position they would have been if the vacated order had never been issued. Prior to issuance of the vacated order, Countrywide was required to seek court approval of any fees or reimbursable expenses under 2016(a). Because the dismissal was vacated, it is as if it was never issued. Countrywide is required to seek court approval for all fees incurred in the interim between dismissal and vacatur.

There is ample case law holding that reinstating a case does not retroactively apply the automatic stay to creditor conduct that occurred during the period between dismissal and reinstatement. *See Frank v. Gulf States Finance Co. (In re Frank)*, 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000); *see also Gargani v. Wells Fargo, et al. (In re Gargani)*, 398 B.R. 839, 840 (Bankr. W.D. Pa. 2009). These cases do not conflict with the Court's ruling. Countrywide was free to act under its loan documents during the time between dismissal and vacatur, and was free to charge expenses to Debtors' accounts pursuant to Plaintiffs' home loan promissory notes. However, once the dismissal was vacated, Countrywide was required, under Rule 2016, to request reimbursement for such expenses from the court before it sought to collect the reimburseable expenses from the debtors.

Countrywide did not detrimentally rely on the vacatur.  Requiring Countrywide to request fees incurred in the interim period does not impair Countrywide's right to be reimbursed for reasonable fees.  Countrywide is merely required to disclose such fees to the court, and make a request for them under Rule 2016.

Accordingly, Plaintiffs are granted summary judgment on this issue.  Fees incurred by Countrywide between dismissal and vacatur of the dismissal order are subject to Rule 2016(a).

## C.     Legal Fees

The Court agrees with Countrywide that there is no statutory authority to award legal fees to the Plaintiffs.  Countrywide asserts that in order to apply an exception to the American Rule, the party requesting fees must show that the other party acted in bad faith.  This is not the case.  Rather, a finding of bad faith is one of several exceptions to the American Rule.  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975).  Another exception to the American Rule is when a party willfully disobeys a court order.  *Id*. at 258.

Countrywide violated this Court's confirmation orders by charging fees for which it did not seek court approval.  Disobedience of a court order is sufficient grounds for awarding legal fees regardless of whether Countrywide acted in bad faith.  Awarding such fees is within the Court's sound discretion.  *See Maid of Mist, Corp., et al. v. Alcatraz Media, LLC, et al.*, 2010 WL 1687810, at *17 (N.D. Ga. April 26, 2010) (awarding legal fees to injured party in a civil contempt case is within the district court's discretion; and district court doesn't abuse discretion in awarding legal fees merely because alleged contemnor does not  willfully violate court order).  Whether the Court should exercise such discretion is a question of fact.  Accordingly, summary judgment is denied on the question of Plaintiffs' legal fees.

**D.      Permanent Injunction**

In Countrywide's Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 411), Countrywide argues that Plaintiffs fail to establish the elements for a permanent injunction in their motion for summary judgment.  (ECF No. 411 at 17).  The party seeking a permanent injunction must show: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.  *VRC LLC v. City of Dallas*, 460 F.3d 607,611 (5th Cir. 2006).

All four elements for the injunction have been satisfied based on the findings in this Memorandum Opinion or previous memoranda opinions issued by the Court.

**a.      Success on the merits**

Today, the Court defines which fees are governed by Rule 2016, and therefore which fees Countrywide is enjoined from assessing without prior court authorization.  The Court also found *supra*, that Rule 2016 governs fees assessed between dismissal of the bankruptcy case and an order vacating dismissal.  Countrywide violated these requirements in attempting to foreclose on homes based on unapproved fees.  Based on these findings, Plaintiffs have achieved actual success on the merits.

**b.      Irreparable Injury**

All of the named Plaintiffs were threatened with post-discharge foreclosure.  In each instance, the threatened foreclosures included attempts to collect unauthorized charges.  Foreclosure undoubtedly constitutes irreparable injury, satisfying the second element for a permanent injunction.  *See Minard Run Oil Co., et al. v.U.S. Forest Serv., et al.*, 670 F.3d 236, 256, n. 14 (3d Cir. 2011).

### c.     Injury outweighs damage injunction will cause to opposing party

The injury to the class outweighs any damage that would be caused to Countrywide.  The injunction will require Countrywide to comply with Rule 2016.  There is no legitimate damage to Countrywide in requiring them to obey the Bankruptcy Rules.  Further, the Court previously found that Countrywide's AS-400 database readily allows Countrywide to identify unauthorized fees in a mechanical fashion.  ECF No. 352 at 44-45.  A simple query in the AS-400 database can determine whether fees were actually imposed on class members or merely recorded on internal records.  ECF No. 352 at 45.  It can also isolate all the fees posted as recoverable on the class members' accounts.  ECF No. 352 at 45.  These findings show that Countrywide will not suffer damage from issuance of the injunction, but will be able to easily comply with the Rule's requirements.

### d.     Public Interest

Lastly, the injunction will not disserve the public interest, but rather is in the public interest.  11 U.S.C. § 105 provides that the Court may issue judgments or orders that are necessary or appropriate for enforcing or implementing court orders or rules, or preventing abuse of process.  The Court previously stated in *Cano* that,

> "The Court cannot administer an estate in a just, speedy, inexpensive, efficient and equitable manner without requiring creditors to file a Rule 2016(a) application for fees and costs that creditors seek to collect post-confirmation.  Without Rule 2016(a) applications, the Court cannot ensure compliance with court orders or protect a debtor's rights under § 1322(b)(5) and the right to a fresh start."

*Cano*, 410 B.R. at 534.

The injunction is in the public interest as it will protect debtors' right to a fresh start, and promote compliance with the Bankruptcy Code.

**Conclusion**

The Court will enter an order consistent with this Memorandum Opinion .

SIGNED **April 23, 2013.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE